**Opinion issued April 16, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00392-CR

————————————

**CHANCE ROACH, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 185th District Court**
**Harris County, Texas**
**Trial Court Case No. 1394753**

---

## MEMORANDUM OPINION

Appellant, Chance Roach, was charged by indictment with aggravated robbery.[1]  Appellant pleaded not guilty.  The jury found him guilty of the lesser-

---

[1]  *See* TEX. PENAL CODE ANN. §§ 29.02(a)(2), 29.03(a)(2) (Vernon 2011), § 31.03(a), (b)(1) (Vernon Supp. 2014).

included offense of aggravated assault.[2]  The jury assessed punishment at 20 years'

confinement and a $10,000 fine.  In three issues, Appellant argues the trial court

(1) abused its discretion by allowing evidence of the complainant's prior consistent

statement, (2) abused its discretion by allowing the prosecutor to question two

witnesses about conversations between herself and the witnesses, and (3) erred by

including an inapplicable definition of "knowingly" in the jury charge.

We affirm.

## Background

On August 6, 2012, J. Hicks drove to a Lowe's in Kingwood, Texas.  After

Hicks parked and got out of his truck, Appellant and M. Layton stopped their truck

to speak with him.  Layton offered to sell Hicks a Lowe's gift card for half of its

cash value.  Hicks declined but offered to give them some cash.  Hicks reached

into his pocket, looked up, and then saw Appellant pointing a gun at him.  Four

days later, Hicks would assert in a sworn statement that, when Hicks saw the gun,

Appellant then said, "[W]e're going to take it all, motherfucker."  After seeing the

gun, Hicks ducked.  Appellant fired the gun, and the bullet grazed Hicks's back.

After a brief chase, Hicks ran inside the building, and Appellant and Layton fled in

their truck.

---

[2]    *See* TEX. PENAL CODE ANN. §§ 22.01(a)(2) (Vernon Supp. 2014), 22.02(a)(2)
(Vernon 2011).

At trial, Appellant's counsel questioned Hicks about the first time he reported to law enforcement his claim of Appellant's statement to him. Appellant's counsel suggested that Hicks did not report the statement until after learning that the Harris County District Attorney's Office charged Appellant with aggravated assault and that Hicks then reported that statement because Hicks wanted Appellant to be charged with "a more serious" offense. The State then offered Hicks's sworn statement given four days after the incident to rebut Appellant's allegations. Appellant objected, but the trial court overruled the objection and admitted the statement.

Also during trial, the prosecutor questioned two witnesses about their conversations with her. One incident occurred in response to Appellant's examination of Layton, who had confirmed that Appellant had made the threatening statement to Hicks. During Appellant's examination, Layton testified that the first time she had reported Appellant's statement to law enforcement had been to the prosecutor less than a week before her testifying at trial. The prosecutor then questioned Layton about some of the details of the conversation, including whether the prosecutor had told Layton anything about what Hicks had reported to the police about the incident. Layton testified that the prosecutor had not conveyed any such information.

The other incident occurred during the punishment phase of trial while Appellant's sister, C. Brandon, was on the stand. Appellant raised two objections during the State's examination of Brandon regarding her conversations with the prosecutor. The trial court did not rule on either objection.

After both sides rested during the guilt-innocence phase of the trial, the trial court prepared the jury charge. The jury charge contained multiple definitions of "knowingly." The jury acquitted Appellant of the offense of aggravated robbery but found him guilty of the lesser-included offense of aggravated assault.

### Evidentiary Complaints

In his first issue, Appellant argues the trial court abused its discretion by allowing evidence of the complainant's prior consistent statement. In his third issue, Appellant argues the trial court abused its discretion by allowing the prosecutor to question two witnesses about conversations between herself and the witnesses.

### A. Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010); *Tarley v. State*, 420 S.W.3d 204, 206 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd). A trial court abuses its discretion if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v.*

4

*State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008); *Tarley*, 420 S.W.3d at 206. A trial court does not abuse its discretion if some evidence supports its decision. *See Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002); *Tarley*, 420 S.W.3d at 206. We will uphold a trial court's evidentiary ruling if it is correct on any theory of law applicable to the case. *See De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009); *Tarley*, 420 S.W.3d at 206.

## B.  Prior Consistent Statement

During the trial, Hicks testified that, when he reached into his pocket to get some cash, Appellant pointed the gun at Hicks's face and said, "[N]o, motherfucker, we're going to take it all." On cross-examination, Appellant's counsel questioned Hicks about when he told police about Appellant's statement during the offense. The following exchange occurred:

> Q.  But at some point you did speak to someone in the Harris County District Attorney's Office?
>
> A.  I think -- what was that? I can't think of that guy's name but, yes, sir I did talk.
>
> . . . .
>
> Q.  Sure. And the first time you talked to him, the guy, Chance Roach here, was he charged with aggravated assault?
>
> A.  I do not recall. I don't know what the charge was.
>
> Q.  Do you remember telling -- being unhappy with the charges against him?
>
> A.  Probably.

Q.     And thinking something more serious should be filed?

A.     Maybe so, yes, sir.

Q.     Because [the then-assigned prosecutor] had described to you that the charges filed against this defendant were aggravated assault; isn't that right?

A.     Yes, sir, I guess.

Q.     And the reason it was aggravated assault was because you had said nothing to the Houston Police Department about the man with the gun saying anything to [you]; isn't is that right?

A.     If it's not on record, I guess it is. I don't know. I'm just telling you from my experience, you know. I mean, I can't --

On redirect examination, the State elicited testimony about the first time Hicks had reported to police what Appellant had said during the incident. The State offered the sworn statement given by Hicks four days after the incident, in which Hicks quoted Appellant saying, "[W]e're going to take it all, motherfucker." Appellant objected, arguing that the statement did not qualify as a prior consistent statement. The trial court overruled the objection and admitted the statement into evidence.

"A prior statement of a witness which is consistent with the testimony of the witness is inadmissible except as provided in Rule 801(e)(1)(B)." TEX. R. EVID. 613(c). "A statement is not hearsay if . . . [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . consistent with the declarant's testimony and is offered to rebut an

6

express or implied charge against the declarant of recent fabrication or improper influence or motive." TEX. R. EVID. 801(e)(1)(B). The elements for introducing a prior consistent statement, then, are (1) the declarant testifies at trial and is subject to cross-examination, (2) an opposing party has raised an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony, (3) the declarant's prior statement is consistent with the declarant's challenged testimony at trial, and (4) the prior consistent statement must have been made before the time that the alleged motive to lie arose. *Hammons v. State*, 239 S.W.3d 798, 804 (Tex. Crim. App. 2007).

In objecting to the report's admission, Appellant conceded that the State had satisfied the first three elements to offer Hicks's prior consistent statement. Appellant argued, however, that the State had failed to satisfy the fourth element. Appellant argues that his examination suggests that Hicks's motive to lie arose immediately after he reported the incident to the police. Appellant did develop, during cross-examination of Hicks, that Hicks was upset about the incident and called a local news channel after speaking with the police. We agree with Appellant that this testimony creates at least some inference that, if Hicks had decided to fabricate portions of his story, it could have happened then.

Nevertheless, this was not the only implication of fabrication raised by Appellant during cross-examination. Appellant also indicated that Hicks became

7

upset that Appellant was initially only charged with aggravated assault. Appellant's questioning suggested that it was only after this decision about how to indict Appellant that Hicks reported Appellant's statement to a law enforcement official. Hicks's statement to the police was made before Appellant was indicted. Accordingly, this prior consistent statement was admissible to rebut the claim of fabrication at this later date. *See id.*

We overrule Appellant's first issue.

## C.    Conversations with Prosecutor

During the trial, the prosecutor questioned two witnesses about conversations she had had with them. One occurred during the guilt-innocence phase. The other occurred during the punishment phase.

### 1.    Guilt-Innocence

During Appellant's cross-examination of Layton, the woman in the truck with him at the time of the incident, the following exchange occurred:

Q.    Who was the first [person in law enforcement] you told Chance Roach said, I'll take it all, blankety blank?

A.    [The prosecutor].

Q.    When was that?

A.    Thursday.

Q.    Thursday?

A.    Yes, sir.

Q. The first time you ever told anybody in law enforcement that Chance Roach said, we'll take it all was last Thursday?

A. Yes, sir.

Q. All the time you talked to [the District Attorney Investigator], never said a word about it?

A. No, sir.

. . . .

Q. (By [defense counsel]) I guess I just want to tie this down: There's no prior statement you ever gave anybody that I, as Chance Roach's lawyer, can look at or listen to where you said he said something, we'll take it all, M.F.?

A. No, sir.

After Appellant passed the witness to the State, the following exchange occurred:

Q. And when we met in my office, did I -- did I tell you the facts of the case; or did I ask you questions?

A. You asked me questions.

Q. In fact did I show you any pictures while we were in my office?

A. No, ma'am.

Q. Are these the first pictures you're seeing here today in this case?

A. Yes, ma'am.

Q. Did I tell you if the defendant said anything to [the complainant]?

A. No, ma'am.

[Defense counsel]: Objection, Your Honor. This is improper bolstering for the district attorney to make herself a witness to an interview of a witness.

THE COURT: Overruled.

On appeal, Appellant argues that the questioning constituted improper bolstering of the witness's testimony. Improper "bolstering" has been defined as "any evidence the *sole* purpose of which is to convince the factfinder that a particular witness or source of evidence is worthy of credit, without substantively contributing 'to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.' " *Rivas v. State,* 275 S.W.3d 880, 886 (Tex. Crim. App. 2009) (emphasis in original) (quoting *Cohn v. State,* 849 S.W.2d 817, 819–20 (Tex. Crim. App. 1993)).

"Evidence that is otherwise inadmissible may become admissible when a party opens the door to such evidence." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009). "A party opens the door by leaving a false impression with the jury that invites the other side to respond." *Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App. 2009). The false impression must be directly relevant to the offense charged, not to a collateral issue. *Id.*

During his cross-examination of the witness, Appellant asked Layton to identify the first time she had told a law enforcement official about any statements

made by Appellant during the incident.  Layton acknowledged that the first time had been to the prosecutor less than a week before she testified at trial. Appellant's examination of Layton created the impression that Layton's claims about what Appellant said could have been fabricated at the meeting with the prosecutor, and perhaps at the prosecutor's suggestion.  *See Williams v. State*, 607 S.W.2d 577, 580 (Tex. Crim. App. 1980) (holding testimony about conversations with prosecutor was invited by defense counsel and necessary to show testimony was not fabricated).

This was directly relevant to the offense charged because the State was seeking to prove that Appellant committed aggravated robbery, which requires showing Appellant was in the course of committing theft.  *See* TEX. PENAL CODE ANN. § 29.03(a) (Vernon 2011) (incorporating elements of robbery into offense of aggravated robbery), § 29.02(a) (Vernon 2011) (establishing offense of robbery if person threatens another in course of committing theft), § 31.03 (Vernon Supp. 2014) (establishing offense of theft if person unlawfully appropriates property with intent to deprive owner of property).  Appellant's statement that he was going to take all of Hicks's money is directly relevant to showing that Appellant was in the course of committing theft.

Evidence of the conversations was relevant, then, to rebutting Appellant's suggestion that Layton had fabricated the quote after meeting with the prosecutor

11

or at the prosecutor's suggestion. *See Williams*, 607 S.W.2d at 580. Because the evidence was relevant to rebutting this claim, the *sole* purpose of the evidence could not have been to bolster Layton's testimony. *Rivas,* 275 S.W.3d at 886. Accordingly, we hold its admission was not improper.

The cases Appellant relies on have no application here. In *Brown*, the defense raised a hearsay objection to a line of questioning about the witness's conversation with the prosecutor. *Brown v. State*, 475 S.W.2d 938, 953 (Tex. Crim. App. 1971), *overruled on other grounds by Bradford v. State*, 608 S.W.2d 918 (Tex. Crim. App. 1980). As opposed to this case, there was no indication that the testimony was being used to rebut a suggestion of fabrication, however. *See id.* Accordingly, the Court of Criminal Appeals reviewed it for error under a regular hearsay analysis. *See id.*

In *Menefee*, the prosecutor said during closing argument, "And Virse, I don't believe I have ever seen anybody that I thought was any more honest than she is." *Menefee v. State*, 614 S.W.2d 167, 168 (Tex. Crim. App. 1981). The objection was to counsel's inserting personal opinion. *Id.* Given that the witness in question was the sole witness who could identify the defendant as the perpetrator of the crime, the court held bolstering by offering personal opinion was improper. *Id.* Here, no opinion of the prosecutor was offered.

12

## 2. Punishment

Appellant argues that, during punishment, the prosecutor improperly elicited testimony about her conversation with the witness, Appellant's sister. The State argues this complaint has not been preserved for appeal. We agree.

For purposes of analyzing preservation, the relevant portions of the State's examination of Appellant's sister are as follows:

> Q. And I told you that I would try my best to stay away from that because it's not relevant to these things.
>
> MR. MARTIN: Objection. She's not asking a questions, she's just commenting. I object to that.
>
> THE COURT: Ask the next question, please.
>
> . . . .
>
> Q. Can you tell the ladies and gentlemen of the jury what troubles he had when he was in the Army?
>
> A. Actually you were the one that told me the troubles.
>
> Q. Ma'am, I don't believe that that's accurate. What I asked you --
>
> MR. MARTIN: Objection, Judge. Now she's testifying to what she did. She should have had an investigator talk to her.
>
> THE COURT: If there's an objection, I haven't heard an objection. But don't argue with the witness, please. Just ask her questions. Don't argue with her.

In order to preserve an issue for appellate review, the complaining party must (1) raise a timely objection and (2) obtain a ruling from the trial court. TEX.

13

R. APP. P. 33.1(a). Here, neither objection was ruled on by the trial court. Accordingly, the issue has not been preserved. *See id.*

We overrule Appellant's third issue.

## Jury Charge

In his second issue, Appellant argues the trial court erred by including an inapplicable definition of "knowingly" in the jury charge.

### A. Standard of Review

When reviewing jury-charge error, we first determine if error actually exists in the jury charge. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Johnson v. State*, 227 S.W.3d 180, 182 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). If we find error, we then determine whether it harmed the appellant. *Ngo*, 175 S.W.3d at 743.

The degree of harm requiring reversal depends upon whether an objection was raised to the error at trial. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). If an appellant did not make a proper objection at trial, the appellant "will obtain a reversal only if the error is so egregious and created such harm that he has not had a fair and impartial trial." *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). Under an egregious harm analysis, a reviewing court examines "the entire jury charge, the state of the evidence, including the contested issues and weight of the probative evidence, the arguments of counsel, and any

14

other relevant information revealed by the record of the trial as a whole." *Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008). "Errors that result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, or vitally affect a defensive theory." *Id.* at 461–62.

## B. Analysis

Section 6.03 of the Texas Penal Code provides multiple definitions of "knowingly." TEX. PENAL CODE ANN. § 6.03(b) (Vernon 2011).

> A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

*Id.* The section, then, contemplates knowledge with respect to (1) the nature of the conduct, (2) the circumstances surrounding the conduct, and (3) the result of the conduct. *Id.*; *Cook v. State*, 884 S.W.2d 485, 487 (Tex. Crim. App. 1994).

Not all offenses incorporate all three definitions of knowingly, however. Accordingly, when a statute uses knowingly in only one of the defined senses, the trial court errs by including the non-applicable definitions of knowingly in the charge. *Cook*, 844 S.W.2d at 491.

Appellant's second issue is based on this premise of law. Appellant correctly argues that aggravated assault by threat—the offense under which the jury convicted him—is a nature-of-the-conduct offense that includes a

15

"knowingly" mens rea. *See* TEX. PENAL CODE ANN. § 22.01(a)(2) (Vernon Supp. 2014) (making it an offense of assault if person ". . . knowingly threatens another . . ."), § 22.02(a)(2) (Vernon 2011) (incorporating elements of assault into offense of aggravated assault); *Landrian v. State*, 268 S.W.3d 532, 536 (Tex. Crim. App. 2008) (holding assault by threat focuses on act of making threat regardless of any result of threat).

Appellant points out that the jury charge's definition of knowingly included both the nature-of-the-conduct definition and the result-of-the-conduct definition. Accordingly, Appellant argues, the charge's definitions "of 'knowingly' improperly permitted the jury to convict the appellant of a [result of the conduct] type of aggravated assault, rather than a 'nature of the conduct' type of assault." The State concedes the error but argues it is harmless. We disagree with both parties that it was error for the trial court to include the result-of-the-conduct definition of knowingly in the jury charge instructions.

While it is true that the jury found him guilty of aggravated assault, which is a nature-of-the-conduct offense, this was not the only offense included in the jury charge. Instead, the primary offense for the jury to consider was aggravated robbery. Aggravated robbery incorporates into its elements the offense of robbery. TEX. PENAL CODE ANN. § 29.03(a) (Vernon 2011). Robbery, as it applies to Appellant, requires showing that the defendant ". . . knowingly threaten[ed] or

place[d] another in fear of imminent bodily injury or death." *Id.* § 29.02(a)(2) (Vernon 2011). As with assault, the act of threatening someone is a nature-of-the-conduct offense. *See id.* § 22.01(a)(2); *Landrian*, 268 S.W.3d at 536. Placing someone in fear of imminent bodily injury or death, however, is a result-of-the-conduct offense. *See* PENAL § 29.02(a)(2); *Gutierrez v. State*, 446 S.W.3d 36, 41 (Tex. App.—Waco 2014, pet. ref'd) (holding being placed in fear is result of conduct); *see also Bosier v. State*, 771 S.W.2d 221, 225 (Tex. App.—Houston [1st Dist.] 1989, pet. ref'd) (holding trial court does not err by including entire statutory definition of knowingly in jury charge for offense of aggravated robbery).

Because the nature-of-the-conduct and the result-of-the-conduct definitions of knowingly were necessary for the entirety of the charge, we hold the trial court did not err by including these definitions. We overrule Appellant's second issue.

## Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Justices Jennings, Higley, and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).

17