PD-0643-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/1/2015 10:49:25 PM
Accepted 7/2/2015 3:19:34 PM
ABEL ACOSTA
CLERK

No. PD-0643-15

## TO THE COURT OF CRIMINAL APPEALS OF TEXAS

CHANCE ROACH
*Appellant*

v.

THE STATE OF TEXAS,
*Appellee*

---

### PETITION FOR DISCRETIONARY REVIEW

---

On Petition For Discretionary Review from the First Court of Appeals
Cause No. 01-14-00392-CR, affirming the judgment in Cause No. 1394753
from the 185th District Court of Harris County, Texas.

---

FILED IN
COURT OF CRIMINAL APPEALS

July 2, 2015

ABEL ACOSTA, CLERK

ALEXANDER BUNIN
Chief Public Defender
Harris County, Texas

SARAH V. WOOD
Assistant Public Defender
Harris County, Texas
Texas Bar Number 24048898
1201 Franklin, 13th Floor
Houston, Texas 77002
Phone: (713) 368-0016
Fax: (713) 368-9278
Sarah.Wood@pdo.hctx.net

**Counsel for Appellant**

# IDENTITY OF PARTIES AND COUNSEL

APPELLANT:                              Chance Roach

TRIAL PROSECUTOR:                       Tanish Manning
                                        Assistant District Attorney
                                        Harris County, Texas
                                        1201 Franklin, Suite 600
                                        Houston, Texas 77002

DEFENSE COUNSEL AT TRIAL:               Ray Martin
                                        1201 Franklin, 13th Floor
                                        Houston, Texas 77002

PRESIDING JUDGE:                        Hon. Reagan Clark
                                        On assignment, 185th District
Court                                   Harris County, Texas
                                        1201 Franklin, 17th floor
                                        Houston, Texas 77002

DEFENSE COUNSEL ON APPEAL:              Sarah V. Wood
                                        Assistant Public Defender
                                        Harris County, Texas
                                        1201 Franklin, 13th Floor
                                        Houston, Texas 77002

# TABLE OF CONTENTS

Identity of Parties and Counsel.................................................................................2

Table of Contents .......................................................................................................3

Index of Authorities ..................................................................................................4

Statement Regarding Oral Argument ......................................................................4

Statement of the Case ...............................................................................................4

Statement of Procedural History .............................................................................5

Ground For Review ...................................................................................................5

> The Court of Appeals erred by holding that it was not error for the jury charge to include both statutory definitions of "knowingly" without any guidance as to which definition should be applied to which offense, particularly given the confusion surrounding the definitions.

Argument .....................................................................................................................5

    Reason for Review .................................................................................................5

    Factual Background ...............................................................................................5

    Erroneous Jury Charge .........................................................................................8

Prayer for Relief........................................................................................................11

Certificate of Service and Compliance ..................................................................12

Appendix....................................................................................................................13

## INDEX OF AUTHORITIES

### Cases

*Gutierrez v. State*, 446 S.W.3d 36 (Tex. App.—Waco 2014, pet. ref'd)..............................5, 6

*Jefferson v. State*, 346 S.W.3d 254 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) ..... 6

*Landrian v. State*, 268 S.W.3d 532 (Tex. Crim. App. 2008). ...................................................... 4

*Reeves v. State*, 420 S.W.3d 812 (Tex. Crim. App. 2013). .......................................................... 6

*Wilson v. State*, 391 S.W.3d 131 (Tex. App.—Texarkana 2012, no pet.) .............................. 5

### Statutes

Tex. Pen. Code § 6.03. ....................................................................................................................... 4

Tex. Pen. Code § 22.01 ...................................................................................................................... 5

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument as it may aid the Court in its analysis of the issues.

## STATEMENT OF THE CASE

On July 16, 2013, Mr. Chance Roach was indicted for aggravated robbery (C.R. at 7). He pleaded not guilty and proceeded to a trial. The jury acquitted him of the aggravated robbery and instead found him guilty of the lesser-included offense of aggravated assault with a deadly weapon (C.R. at 126). The jury then assessed a sentence of twenty years in prison and a $10,000 fine (C.R. at 126).

## STATEMENT OF PROCEDURAL HISTORY

The First Court of Appeals affirmed the trial court's judgment in an unpublished opinion. *Roach v. State,* 01-14-00392-CR, 2015 WL 1778896 (Tex. App.—Houston [1st Dist.] Apr. 16, 2015, no. pet. h.). No motion for rehearing was filed.

## GROUND FOR REVIEW

The Court of Appeals erred by holding that it was not error for the jury charge to include both statutory definitions of "knowingly" without any guidance as to which definition should be applied to which offense, particularly given the confusion surrounding the definitions.

## ARGUMENT

**Reason for Review**

The court of appeals decided an issue that has not been fully deliberated by this Court and it decided this issue in a way that conflicts with other courts of appeals.

**Factual Background**

Mr. Chance Roach endured unusually traumatic beginnings and at times struggled to maintain stability throughout his life. As a child, Chance and his sister were the victims of serious abuse by their own mother (5 R.R. at 22). Chance had to testify against her in her trial when he was only about nine years old (5 R.R. at 14, 20). Despite this ordeal, he grew up to go into the military and to obtain steady employment as an iron worker. (5 R.R. at 15, 28). Unfortunately, he also struggled with substance abuse

and drug addiction. (5 R.R. at 30, 39).

On August 6, 2012, Jerry Hicks was walking through the parking lot of Lowe's Hardware when a man and woman in a truck called him over, asking if he wanted to buy a discounted Lowe's gift card (3 R.R. at 52). When he approached, the man in the truck pulled out a gun and fired a shot. Hicks ducked in time and the bullet only grazed his back. (3 R.R. at 53). He ran back in the store, called 911, and waited about 15 minutes for an officer to speak to him. The officer told Hicks he would investigate and get back to him. (3 R.R. at 54, 58). Hicks testified, "That was pretty much it." (3 R.R. at 59).

Hicks went home and discussed the incident with his wife. They were "very upset" and "mad." That night they decided to call Channel 2 News and they came out and did a story. (3 R.R. at 59-60, 81).

Two other people testified that they were approached in the parking lot by a man and woman selling gift cards. Like Hicks, they identified Mr. Roach in photo lineups, though tentatively. (3 R.R. at 35, 44). However, Hicks and one of the other two witnesses failed to identify the female suspect in the photo spread (3 R.R. at 35, 281; 4 R.R. at 11; State's exhibit 22, 25, 34).

The alleged female suspect, Michelle Layton, testified in detail about the incident at Lowe's and all of the events surrounding it. According to Layton, she and Chance had recently developed a close relationship in which they mostly did methamphetamines and spent nights together. (3 R.R. at 147, 152).

Layton had been a heavy, daily user since she was a child – was still an addict at

the time of trial – and explained to the jury that, as a more experienced user, she could handle herself better than Chance. (3 R.R. at 200). Unlike Chance, she had "learned to control [her] emotions on it." (3 R.R. at 200).

Layton had been living with her grandfather, and on a particular day prior to the incident, she stole her grandfather's wallet and antique firearm. She then used the money to purchase meth from her own father. (3 R.R. at 195-96). Layton described their routine, "And, so, my dad would basically come and pick me up from my grandmother's house and we would ride around and getting high until my grandpa went to sleep…" (3 R.R. at 178).

She gave the firearm to Chance. Apparently, he had it with him when the two decided to try to sell Layton's gift card for gas money. (3 R.R. at 204). She testified that when Hicks approached their vehicle, Chance pulled out the gun and it essentially went off immediately. (3 R.R. at 205).

About two weeks later, the police found her in a Wendy's and questioned her about what happened. She testified that she was so intoxicated and coming down off of meth that she kept falling asleep while they questioned her and they had to repeatedly wake her up. (3 R.R. at 212-214). Layton said they agreed not to arrest her on an outstanding warrant if she agreed to cooperate with them. (3 R.R. at 215). Interestingly, both officers testified that she appeared perfectly sober and also they did not know she had a warrant. (4 R.R. at 37, 70).

The jury acquitted Mr. Roach of aggravated robbery and instead found him

guilty of aggravated assault. (4 R.R. at 135-36). The jury then gave him the maximum sentence of 20 years in prison and a $10,000 fine. (5 R.R. at 63).

**Erroneous Jury Charge**

Both the appellant and the State agreed in their briefs to the Court of Appeals that it was error for the jury instructions to inlcude the entire statutory definition of "knowingly." However, the Court of Appeals held that, contrary to the parties, it was not error at all. This case underscores the ridiculously confusing nature (or is it the "result?") of trying to tell the difference between "nature-of-the-conduct" crimes and "result-of-the-conduct" crimes.

The statutory definition of "knowingly" is:

A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

Tex. Pen. Code § 6.03.

From the definition above, it is apparent that two types of "knowingly" are said to exist. Courts have wrestled to distinguish between the two categories: "nature-of-the-conduct" offenses and "result-of-the-conduct" offenses. See, e.g. *Kelly v. State*, 748 S.W.2d 236, 238 (Tex. Crim. App. 1988) (injury to an elderly is a result-of-the-conduct offense); *Martinez v. State*, 763 S.W.2d 413, 419 (Tex. Crim. App. 1988) (murder is a result-of-the-conduct offense); *Caballero v. State*, 927 S.W.2d 128, 130 (Tex. App.—El

Paso 1996, pet. ref'd) (indecency is a nature-of-the-conduct offense).

In this case, the offense of conviction—aggravated assault by threat—has been held to be a "nature-of-the-conduct" offense. *Landrian v. State*, 268 S.W.3d 532, 540 (Tex. Crim. App. 2008). The original offense charged—aggravated robbery—has been held to be a "result-of-the-conduct" offense. *Gutierrez v. State*, 446 S.W.3d 36, 40 (Tex. App.—Waco 2014), petition for discretionary review refused (Sept. 24, 2014).

The appellant and the State had agreed that since the jury was not correctly informed as to the offense of conviction, that this was error. However, the Court of Appeals held that since the charge included both results-oriented and nature-oriented offenses, it was fine to lump both definitions together in the abstract portion of the charge.

However, it is unlikely that a jury could be expected to delineate between the two definitions of knowingly and then apply them correctly in this case. Even the courts are not clear in this matter and upon further examination, such distinctions simply boil down to semantics.

For example, assault by threat is defined as "threatening another with imminent bodily injury." Tex. Pen. Code § 22.01. Thus it has been categorized as a "nature-of-the-conduct" offense because the gravamen is essentially acting in a threatening manner.

However, it is commonly held that the mens rea of aggravated assault by threat is determined by "whether the defendant intended to cause or knowingly caused in the

victim a reasonable apprehension of imminent bodily injury." *Wilson v. State*, 391 S.W.3d 131, 135 (Tex. App.—Texarkana 2012, no pet.); *and see, e.g. Jefferson v. State*, 346 S.W.3d 254, 257 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

Stated this way, assault by threat clearly becomes a results-oriented offense. Isn't the very "nature of one's conduct" that it will *result* in a person being threatened? The distinction is wordplay.

Even as to robbery, confusion abounds. The case cited by the Court of Appeals, *Gutierrez*, reasons, "[W]e agree that the clause, 'places in fear,' refers to the result of an offender's conduct. Being placed in fear is from the victim's perspective, not the offender's. It is the result of the conduct, being placed in fear, which is the focus of this type of robbery regardless of the offender's actions. And, in this case, both victims testified that they were placed in fear of bodily injury or death." *Gutierrez v. State*, 446 S.W.3d 36, 40-41 (Tex. App.—Waco 2014), petition for discretionary review refused (Sept. 24, 2014). However, this makes no sense.

It is oxymoronic to say that the mens rea of the defendant is to be judged "from the victim's perspective, not the offender's." By its very hornbook definition, mens rea is the "guilty mind" of the defendant—not "the victim." Moreover, to say that the resulting fear in fact controls "regardless of the offender's actions" is likewise incongruous. As in the "nature-of-the-conduct" offenses, a defendant must of course be "aware" that it is the "nature of his conduct" that fear will likely result. The distinction drawn by the legislature leads to absurd and confusing results.

As in this case where the jury was given the entire multifarious definition and then left with no guidance as to how to apply it, error resulted and it was indeed the nature of the charge that it was erroneous.

The jury charge is to be "clear, concise, and to the point." "It is not the function of the charge merely to avoid misleading or confusing the jury: it is the function of the charge to lead and to prevent confusion." *Reeves v. State*, 420 S.W.3d 812, 818 (Tex. Crim. App. 2013).

## PRAYER FOR RELIEF

For the reasons stated above, the Appellant prays that this Court grant his petition, review the case, and hold that the Court of Appeals erred by affirming the trial court's judgment of sentence.

Respectfully submitted,

**ALEXANDER BUNIN**
Chief Public Defender
Harris County Texas


**/s/ Sarah V. Wood**
**SARAH V. WOOD**
Assistant Public Defender
Harris County Texas
1201 Franklin, 13th Floor
Houston Texas 77002
(713) 368-0016 (phone)
(713) 368-9278 (fax)
State Bar Number 24048898

## CERTIFICATE OF SERVICE AND COMPLIANCE

This is to certify that a copy of the foregoing petition for discretionary review has been served on the District Attorney of Harris County, Texas, by the efile service and to the State Prosecuting Attorney and that this petition has <u>1,756</u> words according to the computer program used to draft it.

**/s/ Sarah V. Wood**
**SARAH V. WOOD**

# APPENDIX

2015 WL 1778896
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR DESIGNATION AND SIGNING OF OPINIONS.

DO NOT PUBLISH. TEX. R. APP. P. 47.2(B).
Court of Appeals of Texas,
Houston (1st Dist.

Chance Roach, Appellant
v.
The State of Texas, Appellee

NO. 01–14–00392–CR | Opinion issued April 16, 2015

On Appeal from the 185th District Court, Harris County, Texas, Trial Court Case No. 1394753

**Attorneys and Law Firms**

Alan Curry, Heather Hudson, Devon Anderson, for The State of Texas.

Sarah V. Wood, for Chance Roach.

Panel consists of Justices Jennings, Higley, and Huddle.

**MEMORANDUM OPINION**

Laura Carter Higley, Justice

**\*1** Appellant, Chance Roach, was charged by indictment with aggravated robbery.[1] Appellant pleaded not guilty. The jury found him guilty of the lesser-included offense of aggravated assault.[2] The jury assessed punishment at 20 years' confinement and a $10,000 fine. In three issues, Appellant argues the trial court (1) abused its discretion by allowing evidence of the complainant's prior consistent statement, (2) abused its discretion by allowing the prosecutor to question two witnesses about conversations between herself and the witnesses, and (3) erred by including an inapplicable definition of "knowingly" in the jury charge.

We affirm.

**Background**

On August 6, 2012, J. Hicks drove to a Lowe's in Kingwood, Texas. After Hicks parked and got out of his truck, Appellant and M. Layton stopped their truck to speak with him. Layton offered to sell Hicks a Lowe's gift card for half of its cash value. Hicks declined but offered to give them some cash. Hicks reached into his pocket, looked up, and then saw Appellant pointing a gun at him. Four days later, Hicks would assert in a sworn statement that, when Hicks saw the gun, Appellant then said, "[W]e're going to take it all, motherfucker." After seeing the gun, Hicks ducked. Appellant fired the gun, and the bullet grazed Hicks's back. After a brief chase, Hicks ran inside the building, and Appellant and Layton fled in their truck.

13

At trial, Appellant's counsel questioned Hicks about the first time he reported to law enforcement his claim of Appellant's statement to him. Appellant's counsel suggested that Hicks did not report the statement until after learning that the Harris County District Attorney's Office charged Appellant with aggravated assault and that Hicks then reported that statement because Hicks wanted Appellant to be charged with "a more serious" offense. The State then offered Hicks's sworn statement given four days after the incident to rebut Appellant's allegations. Appellant objected, but the trial court overruled the objection and admitted the statement.

Also during trial, the prosecutor questioned two witnesses about their conversations with her. One incident occurred in response to Appellant's examination of Layton, who had confirmed that Appellant had made the threatening statement to Hicks. During Appellant's examination, Layton testified that the first time she had reported Appellant's statement to law enforcement had been to the prosecutor less than a week before her testifying at trial. The prosecutor then questioned Layton about some of the details of the conversation, including whether the prosecutor had told Layton anything about what Hicks had reported to the police about the incident. Layton testified that the prosecutor had not conveyed any such information.

The other incident occurred during the punishment phase of trial while Appellant's sister, C. Brandon, was on the stand. Appellant raised two objections during the State's examination of Brandon regarding her conversations with the prosecutor. The trial court did not rule on either objection.

**\*2** After both sides rested during the guilt-innocence phase of the trial, the trial court prepared the jury charge. The jury charge contained multiple definitions of "knowingly." The jury acquitted Appellant of the offense of aggravated robbery but found him guilty of the lesser-included offense of aggravated assault.

## Evidentiary Complaints

In his first issue, Appellant argues the trial court abused its discretion by allowing evidence of the complainant's prior consistent statement. In his third issue, Appellant argues the trial court abused its discretion by allowing the prosecutor to question two witnesses about conversations between herself and the witnesses.

### A. Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Martinez v. State,* 327 S.W.3d 727, 736 (Tex.Crim.App.2010); *Tarley v. State,* 420 S.W.3d 204, 206 (Tex.App.—Houston [1st Dist.] 2013, pet. ref'd). A trial court abuses its discretion if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State,* 268 S.W.3d 571, 579 (Tex.Crim.App.2008); *Tarley,* 420 S.W.3d at 206. A trial court does not abuse its discretion if some evidence supports its decision. *See Osbourn v. State,* 92 S.W.3d 531, 538 (Tex.Crim.App.2002); *Tarley,* 420 S.W.3d at 206. We will uphold a trial court's evidentiary ruling if it is correct on any theory of law applicable to the case. *See De La Paz v. State,* 279 S.W.3d 336, 344 (Tex.Crim.App.2009); *Tarley,* 420 S.W.3d at 206.

### B. Prior Consistent Statement

During the trial, Hicks testified that, when he reached into his pocket to get some cash, Appellant pointed the gun at Hicks's face and said, "[N]o, motherfucker, we're going to take it all." On cross-examination, Appellant's counsel questioned Hicks about when he told police about Appellant's statement during the offense. The following exchange occurred:

Q. But at some point you did speak to someone in the Harris County District Attorney's Office?

A. I think—what was that? I can't think of that guy's name but, yes, sir I did talk.

14

....

> Q. Sure. And the first time you talked to him, the guy, Chance Roach here, was he charged with aggravated assault?
>
> A. I do not recall. I don't know what the charge was.
>
> Q. Do you remember telling—being unhappy with the charges against him?
>
> A. Probably.
>
> Q. And thinking something more serious should be filed?
>
> A. Maybe so, yes, sir.
>
> Q. Because [the then-assigned prosecutor] had described to you that the charges filed against this defendant were aggravated assault; isn't that right?
>
> A. Yes, sir, I guess.
>
> Q. And the reason it was aggravated assault was because you had said nothing to the Houston Police Department about the man with the gun saying anything to [you]; isn't is that right?
>
> A. If it's not on record, I guess it is. I don't know. I'm just telling you from my experience, you know. I mean, I can't—

On redirect examination, the State elicited testimony about the first time Hicks had reported to police what Appellant had said during the incident. The State offered the sworn statement given by Hicks four days after the incident, in which Hicks quoted Appellant saying, "[W]e're going to take it all, motherfucker." Appellant objected, arguing that the statement did not qualify as a prior consistent statement. The trial court overruled the objection and admitted the statement into evidence.

**\*3** "A prior statement of a witness which is consistent with the testimony of the witness is inadmissible except as provided in Rule 801(e)(1)(B)." Tex. R. Evid. 613(c). "A statement is not hearsay if ... [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." Tex. R. Evid. 801(e)(1)(B). The elements for introducing a prior consistent statement, then, are (1) the declarant testifies at trial and is subject to cross-examination, (2) an opposing party has raised an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony, (3) the declarant's prior statement is consistent with the declarant's challenged testimony at trial, and (4) the prior consistent statement must have been made before the time that the alleged motive to lie arose. *Hammons v. State,* 239 S.W.3d 798, 804 (Tex.Crim.App.2007).

In objecting to the report's admission, Appellant conceded that the State had satisfied the first three elements to offer Hicks's prior consistent statement. Appellant argued, however, that the State had failed to satisfy the fourth element. Appellant argues that his examination suggests that Hicks's motive to lie arose immediately after he reported the incident to the police. Appellant did develop, during cross-examination of Hicks, that Hicks was upset about the incident and called a local news channel after speaking with the police. We agree with Appellant that this testimony creates at least some inference that, if Hicks had decided to fabricate portions of his story, it could have happened then.

Nevertheless, this was not the only implication of fabrication raised by Appellant during cross-examination. Appellant also indicated that Hicks became upset that Appellant was initially only charged with aggravated assault. Appellant's questioning suggested that it was only after this decision about how to indict Appellant that Hicks reported Appellant's statement to a law enforcement official. Hicks's statement to the police was made before Appellant was indicted. Accordingly, this prior consistent statement was admissible to rebut the claim of fabrication at this later date. *See id.*

We overrule Appellant's first issue.

**C. Conversations with Prosecutor**
During the trial, the prosecutor questioned two witnesses about conversations she had had with them. One occurred during the guilt-innocence phase. The other occurred during the punishment phase.

**1. Guilt–Innocence**
During Appellant's cross-examination of Layton, the woman in the truck with him at the time of the incident, the following exchange occurred:

Q. Who was the first [person in law enforcement] you told Chance Roach said, I'll take it all, blankety blank?

A. [The prosecutor].

Q. When was that?

A. Thursday.

Q. Thursday?

A. Yes, sir.

Q. The first time you ever told anybody in law enforcement that Chance Roach said, we'll take it all was last Thursday?

A. Yes, sir.

Q. All the time you talked to [the District Attorney Investigator], never said a word about it?

A. No, sir.

....

Q. (By [defense counsel] ) I guess I just want to tie this down: There's no prior statement you ever gave anybody that I, as Chance Roach's lawyer, can look at or listen to where you said he said something, we'll take it all, M.F.?

A. No, sir.

After Appellant passed the witness to the State, the following exchange occurred:

Q. And when we met in my office, did I—did I tell you the facts of the case; or did I ask you questions?

A. You asked me questions.

Q. In fact did I show you any pictures while we were in my office?

A. No, ma'am.

Q. Are these the first pictures you're seeing here today in this case?

A. Yes, ma'am.

Q. Did I tell you if the defendant said anything to [the complainant]?

A. No, ma'am.

[Defense counsel]: Objection, Your Honor. This is improper bolstering for the district attorney to make herself a witness to an interview of a witness.

**\*4** THE COURT: Overruled.

On appeal, Appellant argues that the questioning constituted improper bolstering of the witness's testimony. Improper "bolstering" has been defined as "any evidence the *sole* purpose of which is to convince the factfinder that a particular witness or source of evidence is worthy of credit, without substantively contributing 'to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.' " *Rivas v. State,* 275 S.W.3d 880, 886 (Tex.Crim.App.2009) (emphasis in original) (quoting *Cohn v. State,* 849 S.W.2d 817, 819–20 (Tex.Crim.App.1993)).

"Evidence that is otherwise inadmissible may become admissible when a party opens the door to such evidence." *Williams v. State,* 301 S.W.3d 675, 687 (Tex.Crim.App.2009). "A party opens the door by leaving a false impression with the jury that invites the other side to respond." *Hayden v. State,* 296 S.W.3d 549, 554 (Tex.Crim.App.2009). The false impression must be directly relevant to the offense charged, not to a collateral issue. *Id.*

During his cross-examination of the witness, Appellant asked Layton to identify the first time she had told a law enforcement official about any statements made by Appellant during the incident. Layton acknowledged that the first time had been to the prosecutor less than a week before she testified at trial. Appellant's examination of Layton created the impression that Layton's claims about what Appellant said could have been fabricated at the meeting with the prosecutor, and perhaps at the prosecutor's suggestion. *See Williams v. State,* 607 S.W.2d 577, 580 (Tex.Crim.App.1980) (holding testimony about conversations with prosecutor was invited by defense counsel and necessary to show testimony was not fabricated).

This was directly relevant to the offense charged because the State was seeking to prove that Appellant committed aggravated robbery, which requires showing Appellant was in the course of committing theft. See Tex. Penal Code Ann. § 29.03(a) (Vernon 2011) (incorporating elements of robbery into offense of aggravated robbery), § 29.02(a) (Vernon 2011) (establishing offense of robbery if person threatens another in course of committing theft), § 31.03 (Vernon Supp. 2014) (establishing offense of theft if person unlawfully appropriates property with intent to deprive owner of property). Appellant's statement that he was going to take all of Hicks's money is directly relevant to showing that Appellant was in the course of committing theft.

Evidence of the conversations was relevant, then, to rebutting Appellant's suggestion that Layton had fabricated the quote after meeting with the prosecutor or at the prosecutor's suggestion. *See Williams,* 607 S.W.2d at 580. Because the evidence was relevant to rebutting this claim, the *sole* purpose of the evidence could not have been to bolster Layton's testimony. *Rivas,* 275 S.W.3d at 886. Accordingly, we hold its admission was not improper.

The cases Appellant relies on have no application here. In *Brown,* the defense raised a hearsay objection to a line of questioning about the witness's conversation with the prosecutor. *Brown v. State,* 475 S.W.2d 938, 953 (Tex.Crim.App.1971), *overruled on other grounds by Bradford v. State,* 608 S.W.2d 918 (Tex.Crim.App.1980). As opposed to this case, there was no indication that the testimony was being used to rebut a suggestion of fabrication, however. *See id.* Accordingly, the Court of Criminal Appeals reviewed it for error under a regular hearsay analysis. *See id.*

**\*5** In *Menefee,* the prosecutor said during closing argument, "And Virse, I don't believe I have ever seen anybody that I thought was any more honest than she is." *Menefee v. State,* 614 S.W.2d 167, 168 (Tex.Crim.App.1981). The objection was to counsel's inserting personal opinion. *Id.* Given that the witness in question was the sole witness who could identify the defendant as the perpetrator of the crime, the court held bolstering by offering personal opinion was improper. *Id.* Here, no opinion of the prosecutor was offered.

### 2. Punishment

Appellant argues that, during punishment, the prosecutor improperly elicited testimony about her conversation with the witness, Appellant's sister. The State argues this complaint has not been preserved for appeal. We agree.

For purposes of analyzing preservation, the relevant portions of the State's examination of Appellant's sister are as follows:

> Q. And I told you that I would try my best to stay away from that because it's not relevant to these things.
>
> MR. MARTIN: Objection. She's not asking a questions, she's just commenting. I object to that.
>
> THE COURT: Ask the next question, please.
>
> ....
>
> Q. Can you tell the ladies and gentlemen of the jury what troubles he had when he was in the Army?
>
> A. Actually you were the one that told me the troubles.
>
> Q. Ma'am, I don't believe that that's accurate. What I asked you—
>
> MR. MARTIN: Objection, Judge. Now she's testifying to what she did. She should have had an investigator talk to her.
>
> THE COURT: If there's an objection, I haven't heard an objection. But don't argue with the witness, please. Just ask her questions. Don't argue with her.

In order to preserve an issue for appellate review, the complaining party must (1) raise a timely objection and (2) obtain a ruling from the trial court. TEX. R. APP. P. 33.1(a). Here, neither objection was ruled on by the trial court. Accordingly, the issue has not been preserved. *See id.*

We overrule Appellant's third issue.


### Jury Charge

In his second issue, Appellant argues the trial court erred by including an inapplicable definition of "knowingly" in the jury charge.


### A. Standard of Review

When reviewing jury-charge error, we first determine if error actually exists in the jury charge. *See Ngo v. State,* 175 S.W.3d 738, 743 (Tex.Crim.App.2005); *Johnson v. State,* 227 S.W.3d 180, 182 (Tex.App.—Houston [1st Dist.] 2007, pet. ref'd). If we find error, we then determine whether it harmed the appellant. *Ngo,* 175 S.W.3d at 743.

The degree of harm requiring reversal depends upon whether an objection was raised to the error at trial. *Hutch v. State,* 922 S.W.2d 166, 171 (Tex.Crim.App.1996). If an appellant did not make a proper objection at trial, the appellant "will obtain a reversal only if the error is so egregious and created such harm that he has not had a fair and impartial trial." *See Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984). Under an egregious harm analysis, a reviewing court examines "the entire jury charge, the state of the evidence, including the contested issues and weight of the probative evidence, the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole." *Warner v. State,* 245 S.W.3d 458, 461 (Tex.Crim.App.2008). "Errors that result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, or vitally affect a defensive theory." *Id.* at 461–62.

**B. Analysis**

Section 6.03 of the Texas Penal Code provides multiple definitions of "knowingly." TEX. PENAL CODE ANN. § 6.03(b) (Vernon 2011).

> **\*6** A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

*Id.*The section, then, contemplates knowledge with respect to (1) the nature of the conduct, (2) the circumstances surrounding the conduct, and (3) the result of the conduct. *Id.*; *Cook v. State,* 884 S.W.2d 485, 487 (Tex.Crim.App.1994).

Not all offenses incorporate all three definitions of knowingly, however. Accordingly, when a statute uses knowingly in only one of the defined senses, the trial court errs by including the non-applicable definitions of knowingly in the charge. *Cook,* 844 S.W.2d at 491.

Appellant's second issue is based on this premise of law. Appellant correctly argues that aggravated assault by threat— the offense under which the jury convicted him—is a nature-of-the-conduct offense that includes a "knowingly" mens rea. *See* Tex. Penal Code Ann. § 22.01(a)(2) (Vernon Supp. 2014) (making it an offense of assault if person "... knowingly threatens another ..."), § 22.02(a)(2) (Vernon 2011) (incorporating elements of assault into offense of aggravated assault); *Landrian v. State,* 268 S.W.3d 532, 536 (Tex.Crim.App.2008) (holding assault by threat focuses on act of making threat regardless of any result of threat).

Appellant points out that the jury charge's definition of knowingly included both the nature-of-the-conduct definition and the result-of-the-conduct definition. Accordingly, Appellant argues, the charge's definitions "of 'knowingly' improperly permitted the jury to convict the appellant of a [result of the conduct] type of aggravated assault, rather than a 'nature of the conduct' type of assault." The State concedes the error but argues it is harmless. We disagree with both parties that it was error for the trial court to include the result-of-the-conduct definition of knowingly in the jury charge instructions.

While it is true that the jury found him guilty of aggravated assault, which is a nature-of-the-conduct offense, this was not the only offense included in the jury charge. Instead, the primary offense for the jury to consider was aggravated robbery. Aggravated robbery incorporates into its elements the offense of robbery. Tex. Penal Code Ann. § 29.03(a) (Vernon 2011). Robbery, as it applies to Appellant, requires showing that the defendant "... knowingly threaten[ed] or place[d] another in fear of imminent bodily injury or death." *Id.* § 29.02(a)(2) (Vernon 2011). As with assault, the act of threatening someone is a nature-of-the-conduct offense. *See id.* § 22.01(a)(2); *Landrian,* 268 S.W.3d at 536. Placing someone in fear of imminent bodily injury or death, however, is a result-of-the-conduct offense. *See* Penal § 29.02(a)(2); *Gutierrez v. State,* 446 S.W.3d 36, 41 (Tex.App.—Waco 2014, pet. ref'd) (holding being placed in fear is result of conduct); *see also Bosier v. State,* 771 S.W.2d 221, 225 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd) (holding trial court does not err by including entire statutory definition of knowingly in jury charge for offense of aggravated robbery).

Because the nature-of-the-conduct and the result-of-the-conduct definitions of knowingly were necessary for the entirety of the charge, we hold the trial court did not err by including these definitions. We overrule Appellant's second issue.

**Conclusion**

**\*7** We affirm the judgment of the trial court.

Footnotes

_____

[1]     *See* TEX. PENAL CODE ANN. §§ 29.02(a)(2), 29.03(a)(2) (Vernon 2011), § 31.03(a), (b)(1) (Vernon Supp. 2014).

[2]     *See* TEX. PENAL CODE ANN. §§ 22.01(a)(2) (Vernon Supp. 2014), 22.02(a)(2) (Vernon 2011).

---

**End of Document**                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.