Roy Lee BOSIER, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–88–00565–CR.

Court of Appeals of Texas, Houston (1st Dist.).

May 18, 1989.

Charles F. Baird, Michael B. Charlton, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Winston E. Cochran, Jr., and Vic Wisner, Asst. Dist. Attys., Houston, for appellee.

Before SAM BASS, DUGGAN and HUGHES, JJ.

## OPINION

SAM BASS, Justice.

A jury convicted appellant of aggravated robbery, found the enhancement allegations to be true, and assessed punishment at 99 years.

We affirm.

In his first point of error, appellant asserts that the evidence is insufficient to show that the complainant suffered "serious bodily injury." Appellant was convicted of committing the offense of aggravated robbery by causing serious bodily injury to Juan Lopez.

"Serious bodily injury" is defined by statute. Tex. Penal Code Ann. § 1.07(a)(34) (Vernon 1974). "Serious bodily injury" means "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.*

The complainant testified that he was on his way home from the bus station when appellant approached and asked for a cigarette. Appellant told Lopez, "If you don't go to the back corner over there, I going to

hit you with a pipe." Lopez protested and was struck twice over the head with a pipe. Lopez fell to the ground and called for help, but remembered few details until he saw a crowd of people around him. Lopez recognized the appellant among the crowd and pointed him out to a policeman. Officer Smith arrested appellant. In searching the appellant, the officer found a watch and ring, which Lopez identified as his own. Officer Smith testified that Lopez was bleeding from the head and face, and the left side of appellant's face was swelling. Lopez was taken to St. Joseph's Hospital where he spent nine days.

Dr. Parrish, a neurosurgeon, testified that Lopez suffered a "significant trauma" to the left side of his head, had blood behind the left eardrum, and experienced a temporary loss of consciousness, loss of hearing, and loss of vision. His skull was fractured. The doctor noted that Lopez's fracture was through the bone that contains the mechanism for hearing and that once it is disrupted it is gone forever, as is the mechanism of balance on that side. Dr. Parrish further elaborated on the hearing-balance mechanism:

> Q: Doctor, I think the last question I asked you is why doesn't an ear injury such as the one you described heal.
>
> A: Well, the fracture does heal, but once the nerves are damaged, they are out. They are out of action.

Dr. Parrish testified that Lopez's injuries caused protracted loss or impairment of Lopez's balance and created a "substantial risk of death." Dr. Parrish concluded that Lopez's injuries did fit the statutory definition of "serious bodily injury." On redirect and cross-examination, Parrish reaffirmed that the injuries sustained created a substantial risk of death due to the possibility of meningitis and caused a protracted loss or impairment of the function of a bodily member or organ.

If "the injury presents an appreciable risk of death, whether treated or not, that risk is substantial enough for a rational trier of fact to conclude or infer that 'serious bodily injury' has been sustained by the victim." *Moore v. State,* 739 S.W.2d 347, 354 (Tex.Crim.App.1987).

Appellant relies on *Villareal v. State,* 716 S.W.2d 651 (Tex.App.—Corpus Christi 1986, no pet.). In *Villareal,* the court of appeals recognized that rib injuries that prevented Villareal's victim from raising his arms for 10 days showed "impairment" of the function of the victim's arms; however, the court then agreed that this 10-day period was not enough to make the impairment "protracted." *Id.* at 652. There was no testimony that the fractured ribs created a substantial risk of death, and the injury was not the type from which a trier of fact could infer a substantial risk of death.

A subsequent case from the Corpus Christi Court of Appeals held that a broken finger sustained in an assault, which was still stiff at the time of trial, about three months after the attack, constituted protracted loss or impairment of function of a bodily member sufficient to satisfy the definition of serious bodily injury required for aggravated assault. *Allen v. State,* 736 S.W.2d 225, 227 (Tex.App.—Corpus Christi 1987, pet. ref'd); *see also, Kenney v. State,* 750 S.W.2d 10 (Tex.App.—Texarkana 1988, pet. ref'd).

Here, the complainant is still suffering from a hearing and balance impairment because of neurological damage. In judging the sufficiency of the evidence as to an element of the offense, "serious bodily injury," the test is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime "beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The evidence in the record supports the jury's finding that appellant caused the complainant "serious bodily injury."

We overrule appellant's first point of error.

■ The second point of error contends that the State failed to prove that the piece of pipe was a "deadly weapon," as that term is defined in Tex.Penal Code Ann. § 1.07(a)(11)(B): "anything that in the man-

ner of its use or intended use is capable of causing death or serious bodily injury." The pipe used was subsequently lost and, therefore, was not introduced into evidence.

The best proof that an instrument is *capable* of causing serious bodily injury is that, in the manner of its use, it did exactly that. *See Denham v. State*, 574 S.W.2d 129, 130 (Tex.Crim.App.1978); *Williams v. State*, 732 S.W.2d 777, 778 (Tex.App.—Corpus Christi 1987, no pet.). The State does not have to prove a deadly weapon when it proves serious bodily injury. These are alternative statutes. Tex.Penal Code Ann. sec. 29.03(a)(1) and (a)(2) (Vernon 1989). For the reasons stated in appellant's first point of error, the evidence showed that the appellant did inflict serious bodily injury on the appellant.

Appellant's second point of error is overruled.

In his third point of error, appellant asserts that this cause must be reversed if either point one or point two has merit, since the general verdict returned fails to indicate which paragraph of the indictment formed the basis of the verdict. The appellant recognizes that a long line of cases such as *Pinkerton v. State*, 660 S.W.2d 58 (Tex.Crim.App.1983), and *Zanghetti v. State*, 618 S.W.2d 383 (Tex.Crim.App.1981), uphold the validity of general verdicts if evidence is sufficient to support any alternative basis for conviction stated in the charge to the jury.

Because we have decided that neither points one or two have any merit, there is no need to consider the assertions made by appellant in his third point of error.

Appellant's third point of error is overruled.

■ In his fourth point of error, appellant claims the trial court erred in permitting a State's witness to express an expert opinion. Appellant objected to Officer Smith's opinion testimony about the deadly characteristics of the pipe found because no one had testified that it was the same as or similar to the pipe used in the assault.

Q: When you formed your opinion about the deadly characteristics of this particular implement, what are you taking into consideration? Strictly its size and weight?
A: Yes, and the manner in which it could be used.
Q: The pipe that you are speaking about, assuming hypothetically that the pipe was used to strike someone over the head in a forceful manner, would you consider that piece of pipe a deadly weapon based on the legal definition of deadly weapon that you have in front of you?
A: Yes, I would.

Officer Smith testified that he found a piece of pipe near the scene, which was made of galvanized steel and was approximately a foot long and one-half inch in width. He turned the pipe over to the property custodian, but it was misplaced. There is some evidence that provides a basis for comparing the pipe described by Smith to the pipe used by the appellant, albeit tenuous. However, any error in admitting the officer's testimony was harmless beyond a reasonable doubt. It was clear that Lopez had been attacked with a piece of pipe, and the testimony as to the nature of his injuries established that the pipe was a deadly weapon.

Officer Smith did not represent to the jury that the pipe he found was the same one used to strike Lopez. The prosecutor pointed out that it was not necessary for the jury to think this was the same pipe in order to find that a deadly weapon was used: "Now, whether or not you believe that the same pipe Officer Smith recovered and then was lost by the latent print lab was the pipe used or some other pipe that was a deadly weapon was used, it really isn't of much concern which pipe you believe was used." Furthermore, the defense counsel reurged the jury to disregard Officer Smith's opinion as to the characteristics of the pipe found at the scene and to consider "all the other circumstances, what was done at the time" of the assault in order to make their decision regarding the deadly weapon finding. Whether or not the appellant's weapon was "deadly" was

decided by the way it was used and the result.

We overrule appellant's fourth point of error.

 In his fifth and sixth points of error, appellant contends that the trial court erred in submitting the abstract definitions of "intentionally" and "knowingly" to the jury. Over objection, the court's charge defined "intentionally" and "knowingly" according to Tex. Penal Code Ann. §§ 6.03(a) and 6.03(b) (Vernon 1974):

6.03(a): A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

6.03(b): A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

The appellant argued that the offense of aggravated robbery should direct the jury's consideration and attention to whether the defendant has the required culpable mental state concerning the *result* of his conduct. The Court of Criminal Appeals has not characterized the offense of aggravated robbery as either a "result" or "nature of conduct" type of offense.

 *Mena v. State*, 749 S.W.2d 643, 645 (Tex.App.—San Antonio 1988, no pet.), classified aggravated assault with a deadly weapon as having a "result-oriented" mens rea under *Alvarado v. State*, 704 S.W.2d 36 (Tex.Crim.App.1985) (op. on reh'g.). Aggravated robbery, however, is distinguished from aggravated assault by being committed "in the course of committing theft," which refers to the circumstances of the assaultive conduct, rather than the result. Furthermore, if the form of robbery alleged is "aggravated" by the use of a deadly weapon, that refers to the *nature* of conduct rather than the result. That is, a weapon is "deadly" if it is "capable" of causing serious bodily injury in the manner of its use, without regard to whether the actual result is the infliction of serious bodily injury.

The appellant's limited objection did not suggest a definition that would take into account the alternate ways in which aggravated robbery may be committed. An offense may not fit neatly into either a "result" type offense or "nature of conduct" offense. *Adams v. State*, 744 S.W.2d 622, 628–29 (Tex.App.—Fort Worth 1987, pet. ref'd). The trial court did not err in submitting the statutory definitions of "intentionally" and "knowingly" because both definitions allow the jury to consider the nature of appellant's conduct *or* the results of his conduct.

We overrule appellant's fifth and sixth points of error.

The judgment is affirmed.