

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-13-00306-CR

_____

**ADAM GUTIERREZ,**

                                                            **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                            **Appellee**

_____

### From the 54th District Court
### McLennan County, Texas
### Trial Court No. 2011-2412-C2

_____

## O P I N I O N

_____

Adam Gutierrez was charged with and convicted of robbing Juan and Jose DelaRosa and using a deadly weapon to commit that offense. *See* TEX. PENAL CODE ANN. § 29.03(a)(2) (West 2011). He was sentenced to life in prison for each count. Because the trial court did not abuse its discretion in granting the State's motion for continuance and did not err in including each conduct element in the definitions of the

required mental states, the trial court's judgments are affirmed.[1]

**CONTINUANCE**

In his first issue, Gutierrez contends the trial court abused its discretion in granting the State's motion for continuance.

At a pretrial hearing on January 11, 2013, the State presented its written and sworn motion for continuance. In the motion, the State presented three reasons for the need for the continuance: 1) a DNA comparison between Gutierrez, the victims, and the known sample taken from a t-shirt believed to be worn by Gutierrez needed to be done which may result in exculpatory evidence; 2) a cell phone dropped at the scene where the suspect in the robberies, Gutierrez, was hiding needed to be analyzed; and 3) one of the victims received correspondence from someone at the jail which was being investigated as a threat by Gutierrez which might result in more charges being brought against Gutierrez. As to the first reason, the State further explained that the t-shirt was swabbed for DNA by "crime scene techs;" that the DNA was submitted by Detective Manuel Chavez to the DPS lab on June 5, 2012; that a DNA report was generated by DPS on December 12, 2012 and sent to Det. Chavez; and that the DNA report was received by email by the District Attorney's Office on January 2, 2013. Because the DNA profile was consistent with at least three individuals, the State explained, a comparison would need to be done of Gutierrez's DNA, the two victims' DNA, and the

---

[1] Because the sufficiency of the evidence is not an issue for review, we will only discuss the facts of the case as necessary to the issues. This was your basic robbery-at-gunpoint by Gutierrez of two victims without a physical injury to either.

known profile. The State acknowledged that the comparison evidence may be exculpatory because it may exclude Gutierrez as someone who had contact with the t-shirt and may implicate someone else.

At the hearing, the State explained that if it could obtain a buccal swab that day from Gutierrez, the lab would complete the analysis within 60 to 90 days.[2] When asked by the trial court why the State was just now getting a sample of Gutierrez's DNA, the State did not have a definite answer. The prosecutor noted that sometimes "they don't submit the buccal…with the initial evidence that's been swabbed and wait to do that after actually some DNA is located. That seems to have happened in this matter." After noting that Gutierrez had been in the county jail for 427 days already and would be in for close to 500 days when the results of the comparison were obtained, the trial court requested testimony on the subject.

Detective Chavez testified that the offense occurred on October 7, 2011, that Gutierrez was arrested on October 27, 2011, and that Gutierrez had been in jail ever since then. Chavez explained that Gutierrez already had a DNA specimen on file. But, when the report on the DNA recovered from the t-shirt showed that that specimen was not eligible for "CODIS," Chavez needed a new DNA sample from Gutierrez. No one explained the meaning of "CODIS."[3]

After Chavez's testimony, counsel for Gutierrez informed the court that should it

---

[2] Regardless of what the public sees on *CSI*, it takes more than an hour to perform a DNA test and comparison.

[3] CODIS is the Combined DNA Index System which is managed by the Federal Bureau of Investigation.

grant the continuance, Gutierrez would consent to the buccal swab being taken. Counsel then argued that the State had had the evidence since the day of Gutierrez's arrest, that the court had been told several times that the parties were waiting on the DNA results, and that the State had "passed before." He also argued that Gutierrez wanted a trial date and wanted "this thing to be fast-tracked so we can get this matter tried."

The trial court expressed its exasperation with the situation:

Well, it's really very – you know, it's really untimely to ask for these swabs after people have been in jail a year plus two to three months when they've been available the entire time. This case has been reset 11 times. I think the only one on my list that's been reset more than that is one that's been reset 15 times. We've got a county jail that's busting at the seams and this is part of the problem.

*But because the evidence could be exculpatory, I'm going to grant the continuance and allow time for the testing of the – of the Defendant's DNA.*

(Emphasis added).

A criminal action may be continued on the written motion of the State or of the defendant, upon sufficient cause shown. TEX. CODE CRIM. PROC. ANN. art. 29.03 (West 2011). The granting or denial of a motion for continuance is within the sound discretion of the trial court. *Heiselbetz v. State*, 906 S.W.2d 500, 511 (Tex. Crim. App. 1995). Thus, reversal of a judgment is justified only when it is shown the trial court has abused its discretion. *Hernandez v. State*, 643 S.W.2d 397, 399 (Tex. Crim. App. 1982).

Gutierrez appears to argue that the State was required to show due diligence when requesting a continuance and because it did not, the trial court abused its

discretion in granting the motion. However, the cases Gutierrez relies upon require a showing of due diligence when a party is complaining about the trial court's *denial* of a motion for continuance, not when a party is complaining about the trial court granting a motion for continuance. *See Gonzales v. State*, 304 S.W.3d 838 (Tex. Crim. App. 2010); *Wright v. State*, 28 S.W.3d 526 (Tex. Crim. App. 2000). He has not cited this Court to a Texas case supporting his argument, and we decline to extend the holdings in *Gonzales* and *Wright* to the facts of this case.

The trial court mentioned 11 continuances in the underlying proceeding. The record, however, only informs us of what happened with two of them, and both were joint motions for continuance. Specifically, the record indicates that Gutierrez's case was set for arraignment on December 9, 2011. In February of 2012, a joint motion for continuance was submitted which requested a reset of the case until March 2, 2012. On March 2, 2012, the parties again executed a joint motion for continuance requesting the case be reset until May 14, 2012. There is nothing else in the record showing any more continuances or any other passes in the case prior to the State's motion for continuance. The appellate record indicates that the DPS lab report containing the buccal swab taken from Gutierrez in January of 2013 was prepared on March 19, 2013. Then on April 29, 2013, Gutierrez and the State jointly submitted a request for a priority setting for trial. A priority setting was granted, and trial was set for, and occurred on, August 26, 2013.

Although the trial court was understandably exasperated with the slow progress of the case, it appears from the record that the State was not the sole cause of the slow

progression. Further, the trial court did not grant the State's motion because it needed more time; the motion was granted because of the possibility that the tests would reveal material exculpatory evidence. *See Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963) (a due process violation occurs whenever material exculpatory evidence is withheld). Accordingly, the court did not abuse its discretion in granting the State's motion for continuance.[4] Gutierrez' first issue is overruled.

## CONDUCT ELEMENTS

In his second issue, Gutierrez argues that the trial court erred in overruling Gutierrez's challenge to the jury charge, specifically that the charge unnecessarily included result of conduct language in the definitions of the culpable mental states, resulting in "some harm."

### *Arguments Made*

Over Gutierrez's objection, the court's charge defined "intentionally" and "knowingly" according to Texas Penal Code Section 6.03. TEX. PENAL CODE ANN. § 6.03(a) and (b) (West 2011). Those definitions are as follows:

> (a) A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

> (b) A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably

---

[4] Because we have not found an abuse of discretion, we decline to discuss Gutierrez's speedy trial argument as evidence of harm.

certain to cause the result.

*Id*. Gutierrez argued to the trial court that the offense for which he was being tried was a "nature of conduct" offense; and thus, the references to "result of conduct" should be removed from the definitions. Gutierrez's objection was overruled.

On appeal, Gutierrez generally argues that we are not required to "parse" the individual conduct elements for the culpable mental state "because the act of aggravated robbery is criminalized because of [its] very nature." Appellant's brief, pg. 21 (*citing Cook v. State*, 884 S.W.2d 485, 487 (Tex. Crim. App. 1994) (en banc)). We respectfully disagree. The Court of Criminal Appeals has made it clear that if the offense as charged involves multiple types of conduct elements, then the charge should define each relevant conduct element in the culpable mental states. *Hughes v. State*, 897 S.W.2d 285, 295-296 (Tex. Crim. App. 1994).

*Law*

There are three "conduct elements" which may be involved in an offense: (1) the nature of the conduct; (2) the result of the conduct; and, (3) the circumstances surrounding the conduct. *Cook v. State*, 884 S.W.2d 485, 487 (Tex. Crim. App. 1994). An offense may contain any one or more of these "conduct elements" which alone or in combination form the overall behavior which the Legislature has intended to criminalize, and it is these essential "conduct elements" to which a culpable mental state must apply. *Id*. Thus, the culpable mental state definitions in the charge must be tailored to the conduct elements of the offense. *Id*.; *Patrick v. State*, 906 S.W.2d 481, 492

(Tex. Crim. App. 1995). Where the charged offense does not include a particular conduct element, it is error for the court's charge to contain a definition of the culpable mental state for that conduct element in the abstract portion of the charge. *See Hughes v. State*, 897 S.W.2d 285, 295-296 (Tex. Crim. App. 1994). A trial court does not err, however, in defining the culpable mental states to nature, result, and circumstances surrounding conduct when all three of the conduct elements are contained within the offense. *See Patrick v. State*, 906 S.W.2d 481, 492 (Tex. Crim. App. 1995).

*Application*

Aggravated robbery, as charged in this case, is committed when, in the course of committing theft, a person threatens or places another in fear of bodily injury or death and the person uses or exhibits a deadly weapon. TEX. PENAL CODE ANN. §§ 29.02(a)(2), 29.03(a)(2) (West 2011). The element "in the course of committing theft" refers to the circumstances surrounding the conduct, rather than the result. *See Barnes v. State*, 56 S.W.3d 221, 234 (Tex. App.—Fort Worth 2001, pet. ref'd); *Bosier v. State*, 771 S.W.2d 221, 225 (Tex. App.—Houston [1st Dist.] 1989, pet. ref'd). Because the form of robbery alleged is "aggravated" by the use of a deadly weapon, that element refers to the nature of conduct rather than the result of conduct because a weapon is "deadly" if it is "capable" of causing serious bodily injury in the manner of its use, without regard to whether the actual result is the infliction of serious bodily injury. *Bosier*, 771 S.W.3d at 225.

But the most crucial question in our analysis of this issue is whether the element

that requires the victim to be threatened or placed in fear of imminent bodily injury or death is a nature of conduct element or a result of conduct element. There are two parts to, or clauses that form, this element: that the offender either (1) threatens another with imminent bodily injury or death, or (2) places another in fear of imminent bodily injury or death. *See* TEX. PENAL CODE ANN. § 29.03(a)(3) (West 2011). At least one court of appeals has held that this element, in its entirety, refers to a result of the defendant's conduct. *See Garza v. State*, 794 S.W.2d 497, 501 (Tex. App.—Corpus Christi 1990, pet. ref'd). Although the *Garza* court relied on an opinion in which the charged offense was aggravated robbery with bodily injury, *see Bosier v. State*, 771 S.W.2d 221 (Tex. App.—Houston [1st Dist.] 1989, pet. ref'd), we agree that the clause, "places in fear," refers to the result of an offender's conduct.[5] Being placed in fear is from the victim's perspective, not the offender's. It is the result of the conduct, being placed in fear, which is the focus of this type of robbery regardless of the offender's actions. And, in this case, both victims testified that they were placed in fear of bodily injury or death.

*Summary*

Based on the evidence and charge as submitted, there is the potential the jury could base its verdict on a determination that the victim was placed in fear of bodily injury or death as a result of the actions of Gutierrez during the course of committing theft. We hold that the "places in fear of bodily injury or death" portion of the element

---

[5] To the extent the *Garza* opinion holds that the "threatens" clause of the element refers to result of conduct, we disagree. *See Garfias*, 424 S.W.3d at 60; *McCarty v. State*, No. 10-13-00066-CR, 2013 Tex. App. LEXIS 12407, *7 (Tex. App.—Waco Oct. 3, 2013, pet. ref'd) (not designated for publication).

of robbery is a result of conduct element.  Accordingly, because the charge used language of all three conduct elements in its definitions of the culpable mental states and all three conduct elements are present in this case, the trial court did not err in overruling Gutierrez's objection.

Gutierrez's second issue is overruled.

**CONCLUSION**

Having overruled each issue on appeal, we affirm the judgments of the trial court.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed June 19, 2014
Publish
[CRPM]