

# IN THE
# TENTH COURT OF APPEALS

No. 10-19-00432-CR

**RODRICK EUGENE HARRIS,**

Appellant

 **v.**

**THE STATE OF TEXAS,**

Appellee

**From the 54th District Court**
**McLennan County, Texas**
**Trial Court No. 2017-63-C2**

## MEMORANDUM OPINION

On September 23, 2020, this Court issued a memorandum opinion affirming appellant Rodrick Eugene Harris's convictions for one count of aggravated sexual assault of a child and two counts of indecency with a child by contact. *See generally Harris v. State*, No. 10-19-00432-CR, 2020 Tex. App. LEXIS 7730 (Tex. App.—Waco Sept. 23, 2020, no pet. h.) (mem. op., not designated for publication). On October 7, 2020, Harris filed a motion for rehearing, and we requested a response to that motion. After reviewing the motion

for rehearing and response thereto, we grant the motion for rehearing. We withdraw our memorandum opinion and judgment issued on September 23, 2020, and substitute the following in their place.

In five issues, Harris challenges his convictions for one count of aggravated sexual assault of a child and two counts of indecency with a child. *See* TEX. PENAL CODE ANN. §§ 21.11, 22.021. We affirm as modified.

## I. HARRIS'S WRITTEN AND ORAL MOTIONS FOR CONTINUANCE

In his first and second issues, Harris complains that the trial court abused its discretion by denying his written and oral motions for continuance. We disagree.

### A. Applicable Law

The denial of a motion for continuance is within the sound discretion of the trial court, and we review a trial court's denial of a motion for continuance for an abuse of discretion. *See Renteria v. State*, 206 S.W.3d 689, 699 (Tex. Crim. App. 2006); *see also Gutierrez v. State*, 446 S.W.3d 36, 38 (Tex. App.—Waco 2014, pet. ref'd). "[G]reat deference must be shown to trial courts, because of the scheduling problems they face." *United States v. Cronic*, 466 U.S. 648, 662 n.31, 104 S. Ct. 2039, 2048 n.31, 80 L. Ed. 2d 657 (1984); *see Cates v. State*, 72 S.W.3d 681, 692 (Tex. App.—Tyler 2001, no pet.). An appellant claiming the erroneous denial of a motion for continuance must show: (1) the trial court erred by denying the motion for continuance; and (2) such denial harmed him in some tangible way. *Gonzales v. State*, 304 S.W.3d 838, 843 (Tex. Crim. App. 2010).

**B.      Harris's Written Motions for Continuance**

The Clerk's Record contains two written motions for continuance filed by Harris—one seeking additional time to secure testimony from a missing witness—Willy Lopez—and the second complaining about the purported withholding of evidence. In the first motion for continuance, Harris sought additional time to procure the testimony of Lopez, who was allegedly the first law-enforcement officer that responded to the complaint. Regarding the motion for continuance seeking additional time to procure testimony from Lopez, Harris concedes that this motion, though written, is not sworn to by a person having personal knowledge of the fact relied on for the continuance. Motions for continuance in criminal proceedings must be in writing and set forth sufficient cause for the continuance. *See* TEX. CODE CRIM. PROC. ANN. art. 29.03. Moreover, "[a]ll motions for continuance must be sworn to by a person having personal knowledge of the facts relied on for the continuance." *Id.* art. 29.08. Furthermore, a motion for continuance that is not sworn preserves nothing for appellate review. *See Anderson v. State*, 301 S.W.3d 276, 279 (Tex. Crim. App. 2009). Because Harris's motion for continuance seeking additional time to procure testimony from Lopez was not sworn, we conclude that Harris did not preserve error with regard to that motion.

The second, written motion for continuance filed by Harris complained about the purported withholding of evidence. In this pro se motion, Harris references evidence from "phone dump's [sic]" and argues that he should have had this information in his

possession sooner.[1]  However, in this motion, Harris acknowledges that his appointed private investigator, Edward McElyea, had the information on February 19, 2019, almost seven months prior to trial.  Additionally, Harris concedes that his standby counsel had the records and provided him with copies of the calls and texts seventeen days before trial.  Standby counsel also provided redacted photographs and videos from the cell phones fourteen days before trial.  The record also indicates that David Parkinson, an investigator with the McLennan County District Attorney's Office, went to the jail at least three times and allowed Harris as much time as he wanted to review the phone dump. Parkinson explained that the information from the phone dump contained pornography and was on a thumb drive, both of which are considered contraband in jail and, thus, could not be given to Harris personally.  Regarding the information contained in the thumb drive, Parkinson recalled that Harris was never specific as to what he was looking for; rather, Harris merely scrolled through the information.  Parkinson further testified that he told Harris that there were no time constraints and that he would stay as long as necessary.  Harris admitted that he was dumbfounded and that he did not know what he was looking for on the phone.

At the hearing on this motion for continuance, the trial court noted that standby counsel had been given the phone dump in February and asked what could be given to

---

[1] The record reflects that Harris represented himself most of the trial with the assistance of standby counsel.

Harris. At this hearing, Harris made generalized statements about trying to "piece the beginning puzzles together." Harris then informed the trial court that he needed information from a cell phone in the possession of his ex-girlfriend, but conceded that he had not yet subpoenaed this information.

In any event, the record demonstrates that Harris was given ample access to the phone dump and that he was provided printouts, videos, and photographs. Based on our review, we cannot say that the record shows with sufficient specificity that Harris was harmed in some tangible way by the trial court's denial of his motion for continuance based on the phone dump. *See Gonzales*, 304 S.W.3d at 843; *Heiselbetz*, 906 S.W.2d at 511-12 (noting that, to show that the trial court abused its discretion by refusing to grant a motion for continuance, the movant must have established "specific prejudice to his cause arising from the trial court's failure to continue the trial"); *see also Johnson v. State*, No. 10-11-00256-CR, 2012 Tex. App. LEXIS 4400, at *9 (Tex. App.—Waco May 30, 2012, pet. ref'd) (mem. op., not designated for publication) ("Ordinarily, a defendant develops the evidence showing how he was harmed by the trial court's denial of a requested continuance during a hearing on a motion for new trial." (citing *Gonzales*, 304 S.W.3d at 842-43)).[2]

---

[2] In his motion for new trial, Harris confined his argument to the following: that he "is entitled to a new trial because the judgment is contrary to the law and the evidence." There was no hearing on the motion for new trial, and the motion was ultimately overruled by operation of law. *See* TEX. R. APP. P. 21.8(a), (c).

## C.     Harris's Oral Motion for Continuance

In addition to the foregoing, Harris complains about the trial court's denial of his oral motion for continuance. In this oral motion, Harris sought additional time to find a cell phone in the possession of his ex-girlfriend that allegedly contained fifty text messages from the complainant about the allegations in this case.

As stated above, the Code of Criminal Procedure provides that "a criminal action may be continued on the written [and sworn] motion of the State or of the defendant, upon sufficient cause shown . . . ." TEX. CODE CRIM. PROC ANN. arts. 29.03, 29.08. The Court of Criminal Appeals has interpreted this to mean that "'if a party makes an unsworn oral motion for continuance and the trial judge denies it, the party forfeits the right to complain about the judge's ruling on appeal.'" *Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim. App. 2012) (quoting *Anderson*, 301 S.W.3d at 279). "Ultimately, an unsworn oral motion [for continuance] preserves nothing for appeal." *Blackshear*, 385 S.W.3d at 591.

Accordingly, because Harris's motion for continuance complaining about the cell phone in the possession of his ex-girlfriend was neither written nor sworn, he has not preserved this complaint for appellate review. *See* TEX. CODE CRIM. PROC. ANN. arts. 29.03, 29.08; *see also Blackshear*, 385 S.W.3d at 591; *Anderson*, 301 S.W.3d at 279. And because we have rejected Harris's complaints as to both his written and oral motions for continuance, we overrule Harris's first and second issues.

## II.    THE JURY CHARGE

In his third issue, Harris asserts that the jury charge failed to provide a meaningful limiting instruction regarding the use of extraneous-offense evidence. In other words, Harris argues that the instruction given in the jury charge was too broad and should have been restricted in scope.[3]

In reviewing a jury-charge issue, an appellate court's first duty is to determine whether error exists in the jury charge. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). If error is found, the appellate court must analyze that error for harm. *Middleton v. State*, 125 S.W.3d 450, 453-54 (Tex. Crim. App. 2003). If an error was properly preserved by objection, reversal will be necessary if the error is not harmless. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Conversely, if error was not preserved at trial by a proper objection, as was the case here, a reversal will be granted only if the error presents egregious harm. *Id.*

Texas Rule of Evidence 105(a) provides that "[w]hen evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another

---

[3] The trial court gave a Rule 404(b) instruction in the charge, which provided as follows:

You are instructed that if there is any testimony before you in this case regarding the Defendant having committed any offenses, if any, other than the offenses alleged against him in the indictment in this case, you cannot consider said testimony for any purpose, unless you find and believe beyond a reasonable doubt that the Defendant committed such other offenses, if any, were committed, and even then you may only consider the same in determining proof of motive, opportunity, intent, preparation, plan or knowledge, if any, in connection with the offenses, if any, alleged against him in the indictment in this case, and for no other purpose.

purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." TEX. R. EVID. 105(a). When extraneous-offense evidence is admitted, the trial court should, upon request, instruct the jury that the evidence is limited to whatever specific purpose the proponent advocated. *See* TEX. R. EVID. 404(b); *Taylor v. State*, 920 S.W.2d 319, 323 (Tex. Crim. App. 1996); *see also Thibodeaux v. State*, Nos. 10-13-00466-CR, 10-13-00467-CR, & 10-14-00005-CR, 2015 Tex. App. LEXIS 7933, at *6 (Tex. App.—Waco July 30, 2015, no pet.) (mem. op., not designated for publication). Moreover, when no limiting instruction is given, the jury considers the evidence for all purposes, and no instruction is needed in the charge. *See Hammock v. State*, 46 S.W.3d 889, 895 (Tex. Crim. App. 2001); *see also Thibodeaux*, 2015 Tex. App. LEXIS 7933, at **6-7. Therefore, it is the scope of the limiting instruction given, or not given, at the time the evidence is introduced that defines for what the jury can consider the evidence. *See Hammock*, 46 S.W.3d at 895; *see also Thibodeaux*, 2015 Tex. App. LEXIS 7933, at *7.

In the instant case, the State sought to introduce evidence about Harris's gang affiliation; an alleged plot to kill the child victim, H.B.; Harris's criminal history; and Harris's disciplinary record in the Texas Department of Criminal Justice. When the State sought to introduce this evidence through H.B., Detective Chris Eaton of the Waco Police Department, inmate witness Jason McCoy, and Harris himself, Harris did not request a limiting instruction. Therefore, because Harris did not request a limiting instruction at

the time the complained-of evidence was introduced, the evidence could be considered for all purposes by the jury, and no instruction was needed in the charge. *See Hammock*, 46 S.W.3d at 895; *see also Thibodeaux*, 2015 Tex. App. LEXIS 7933, at *8. Accordingly, we conclude that the trial court did not err in failing to give a more restrictive jury-charge instruction. *See Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007) (noting that the trial court does not have a sua sponte duty to instruct the jury on all potential defensive or evidentiary issues and is not bound to give instructions that the party did not request); *Hammock*, 46 S.W.3d at 895; *see also Beaty v. State*, No. 05-17-00287-CR, 2018 Tex. App. LEXIS 6600, at **28-29 (Tex. App.—Dallas Aug. 21, 2018, no pet.) (concluding that the trial court did not err by failing to give a more restrictive Rule 404(b) instruction in the charge when the limiting instruction given in the charge was the same limiting instruction given to the jury when the evidence was admitted); *Thibodeaux*, 2015 Tex. App. LEXIS 7933, at *8. And given this conclusion, we need not conduct a harm analysis under *Almanza*. *See Hutch*, 922 S.W.2d at 170; *see also Middleton*, 125 S.W.3d at 453-54; *Almanza*, 686 S.W.2d at 171. We overrule Harris's third issue.

### III.    THE IMPOSITION OF CONSECUTIVE SENTENCES

In his fourth issue, Harris argues that the trial court's decision to order his sentences to run consecutively without providing a reason for doing so constituted cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

A complaint that punishment is cruel and unusual must be preserved for review. *See Curry v. State*, 910 S.W.2d 490, 497 (Tex. Crim. App. 1995) (en banc). Constitutional rights, including the right to be free from cruel and unusual punishment, may be waived by failure to object. *See Castaneda v. State*, 135 S.W.3d 719, 723 (Tex. Crim. App. 2003). To avoid procedural default on appeal on a punishment issue, a defendant must complain of the sentence by objection during trial or, if there was no opportunity to object, in a motion for new trial. *See* TEX. R. APP. P. 33.1(a)(1); *see also Hardeman v. State*, 1 S.W.3d 689, 690 (Tex. Crim. App. 1999); *Issa v. State*, 826 S.W.2d 159, 161 (Tex. Crim. App. 1992). The requirement that an objection be raised in the trial court assumes that the defendant had the opportunity to raise it there. *See Hardeman*, 1 S.W.3d at 690.

In the instant case, Harris was asked if there was any legal reason why he should not be sentenced in accordance with the jury's verdict. Harris responded, "All the legal reasons that will be stated in my appeal." The trial court noted that Harris did not specify a legal reason barring sentencing and proceeded to consider the State's request to cumulate Harris's sentences based on his crimes, past and present, his gang affiliations, and future dangerousness. Harris did not object to the cumulation of his sentences in open court, nor did he file a motion for new trial raising the argument alleged in this issue. Accordingly, we conclude that Harris has failed to preserve error in this issue by failing to object at his earliest opportunity. *See* TEX. R. APP. P. 33.1(a)(1); *Castaneda*, 135

S.W.3d at 723; *Hardeman*, 1 S.W.3d at 690; *Curry*, 910 S.W.2d at 497; *Issa*, 826 S.W.2d at 161. We overrule Harris's fourth issue.

## IV.     THE TIME-PAYMENT FEE

In his fifth issue, Harris contends that the court cost imposed for a time-payment fee under section 133.103(b) and (d) of the Local Government Code is unconstitutional. *See* TEX. LOCAL GOV'T CODE ANN. § 133.103(b), (d).   As such, Harris requests that we modify the judgments by deleting $22.50 of the court costs assessed.

In the instant case, there were three judgments—one corresponding with Harris's conviction for aggravated sexual assault of a child and two corresponding with Harris's convictions for two counts of indecency with a child by contact.   The cost bill was generated the same day as the judgments on September 12, 2019.   However, each of the judgments state "SEE BELOW" with regard to court costs imposed and also include the following language corresponding with the heading, "Restitution Payable to":   "(See special finding or order of restitution finding or order of restitution which is incorporated herein by this reference.)."   Nevertheless, included in the bill of costs is the time-payment fee in the amount of $25.

Regarding the constitutionality of section 133.103(b) and (d) of the Local Government Code, this Court has previously held that these provisions are facially unconstitutional because the collected funds are sent into the general-revenue fund and are not sufficiently related to the criminal-justice system or a legitimate criminal-justice

purpose.  *See Simmons v. State*, 590 S.W.3d 702, 710-13 (Tex. App.—Waco 2019, pet. filed) (holding that section 133.103(b) and (d) of the Local Government Code are facially unconstitutional because the collected funds are sent into the general-revenue fund and are not sufficiently related to the criminal-justice system or a legitimate criminal-justice purpose (citations omitted)).  As such, we sustain Harris's fifth issue.

## V.    CONCLUSION

Because we have sustained Harris's fifth issue and concluded that ninety percent of the time-payment fee, as prescribed in section 133.103(b) and (d) of the Local Government Code, is facially unconstitutional, we modify the trial court's judgments to change the time-payment fee from \$25 to \$2.50.  *See* TEX. CODE CRIM. PROC. ANN. art. 102.073 (providing that, in a single criminal action in which a defendant is convicted of two or more offenses or of multiple counts of the same offense, the court may assess court costs or fees only once against the defendant); *Hurlburt v. State*, 506 S.W.3d 199, 203 (Tex. App.—Waco 2016, no pet.) ("Thus, we presume that the Legislature, in using the phrase, 'in a single criminal action' in article 102.073(a), meant the phrase to be interpreted as 'allegations and evidence of more than one offense . . . [which] are presented in a single trial or plea proceeding,' as stated in *Pharr*.").  We affirm the trial court's judgments as modified.


JOHN E. NEILL
Justice

Before Chief Justice Gray
        Justice Davis, and
        Justice Neill
Affirmed as modified
Opinion delivered and filed December 30, 2020
Do not publish
[CRPM]

