**Opinion filed February 23, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-21-00173-CR

_____

## PATRICK SHAWN ELIZONDO, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 244th District Court**

**Ector County, Texas**

**Trial Court Cause Nos. C-20-0630-CR, C-20-0631-CR, & C-20-0729-CR**

## M E M O R A N D U M   O P I N I O N

Patrick Shawn Elizondo, Appellant, appeals his convictions for five counts of aggravated robbery by threat. *See* TEX. PENAL CODE ANN. § 29.03(a)(2) (West 2019). The jury found Appellant guilty as charged and assessed punishment for each count at imprisonment for fifteen years in the Institutional Division of the Texas Department of Criminal Justice, and the trial court sentenced Appellant

accordingly—with each sentence running concurrently. On appeal, Appellant presents three issues: (1) that the exclusion of relevant conduct elements from the definitions in the abstract portion of the trial court's charge was egregious error; (2) that the inclusion of the definition of "recklessly" in the abstract portion of the charge was egregious error; and (3) that the trial court abused its discretion in denying a motion for mistrial. We affirm.

*Factual and Procedural History*

The charges arose out of a series of robberies that took place from March 23, 2020, to March 27, 2020, when Appellant and his accomplice, Joe Ortiz, robbed three stores. After robbing the third store, Appellant stole a vehicle from one of the store employees and used it to flee the scene. Officer Alejandro Munoz from the Odessa Police Department responded to the third robbery and issued an "attempt to locate" on the stolen vehicle. Later that night, after Appellant had dropped off Ortiz, another officer identified a vehicle that matched the "attempt to locate" and activated his emergency lights. Appellant fled, reaching speeds of over 110 miles per hour, but eventually drove into a field and crashed. A subject was seen fleeing from the vehicle, so officers formed a perimeter and began to search the surrounding area. Police eventually found Appellant hiding within the search area.

Appellant was brought in and questioned by Detective Donaciano Rocha of the Odessa Police Department. Appellant provided Detective Rocha with an alibi, and Detective Rocha decided not to arrest Appellant at that time. Detective Rocha subsequently discovered that Appellant's alibi was inconsistent with the stories from other witnesses that he interviewed, and Detective Rocha "picked up" Appellant again. This time, Appellant refused to answer questions and asked for a lawyer. Appellant was arrested and ultimately charged with five counts of aggravated robbery by threat.

2

I. *Trial Court Charge Errors*

Appellant's first two issues complain of charge error. In Appellant's first issue he contends, and the State concedes, that in the definitions of "intentionally" and "knowingly" as given in the charge, the trial court failed to include all of the relevant conduct elements for aggravated robbery. In his second issue, Appellant claims that providing a definition for "recklessly" in the charge was error because "recklessly" is not a culpable mental state for aggravated robbery by threat. Appellant argues that these errors, separately and combined, egregiously harmed Appellant.

A review of alleged jury charge error involves two steps. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994). First, we determine if there is any error; second, if there is error, we must determine if the error resulted in sufficient harm to require reversal. *Ngo*, 175 S.W.3d at 743–44; *Abdnor*, 871 S.W.2d at 731–32.

Not all charge errors require reversal on appeal. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). If the charge is erroneous, then on appeal we must first determine if the defendant objected to the erroneous charge. *Id.* If the defendant objected to the erroneous charge, we will reverse if the record shows that the error caused "some harm." *Id.* Conversely, if the defendant failed to object, an appellate court may only reverse upon a finding of "egregious harm." *Id.* Egregious harm is harm that denies the defendant a fair and impartial trial. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013). This is a difficult standard to meet, and the harm must be shown in the record. *Reeves*, 420 S.W.3d at 816. To assess harm, the appellate court reviews the *Almanza* factors: (1) the jury charge itself; (2) the state of the evidence, including weight and probative value; (3) counsel's arguments; and (4) any other relevant information in the trial record. *Vega v. State*, 394 S.W.3d 514,

521 (Tex. Crim. App. 2013); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).

The relevant portion of the charge defining the culpable mental states is:

> You are instructed that a person acts **"intentionally"**, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result.
>
> You are instructed that a person acts **"knowingly"**, or with knowledge, with respect to the result of his conduct when he is aware that his conduct is reasonably certain to cause the result.
>
> A person acts **"recklessly,"** or is reckless, with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise . . . .

There are three conduct elements that may be involved in an offense: the nature of the conduct, the result of the conduct, and the circumstances surrounding the conduct. *Young v. State*, 341 S.W.3d 417, 423 (Tex. Crim. App. 2011). An offense may contain any one or more of these conduct elements that alone or in combination form the overall behavior that the legislature has intended to criminalize, and it is these essential conduct elements to which a culpable mental state must apply. *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). An offense involving multiple conduct elements requires a charge that includes all relevant conduct elements in the definitions of the culpable mental states. *See Hughes v. State*, 897 S.W.2d 285, 295–96 (Tex. Crim. App. 1994).

Aggravated robbery by threat is an offense that implicates all three "conduct elements." *Gutierrez v. State*, 446 S.W.3d 36, 40–41 (Tex. App.—Waco 2014, pet. ref'd). In the charge of the present case, only the "result of the conduct" element was included in the definitions. The other two, "nature of conduct" and

4

"circumstances of the conduct," were erroneously omitted from the definitions. *See Servin v. State*, 582 S.W.3d 629, 632 (Tex. App.—San Antonio 2019, no pet.); *see also Garfias v. State*, 424 S.W.3d 54, 60 (Tex. Crim. App. 2014); *Gutierrez*, 446 S.W.3d at 39–41.

Further, inclusion of a culpable mental state that is not pertinent to the charged conduct is error. *See Patrick v. State*, 906 S.W.2d 481, 491–92 (Tex. Crim. App. 1995). As set out above, the abstract portion of the charge in this case contained a definition of "recklessly," which is not an applicable culpable mental state for the offense of aggravated robbery by threat. A person commits aggravated robbery by threat (as charged in this case) if, (1) while in the course of committing theft, (2) he *intentionally* or *knowingly* threatens or places another in fear of imminent bodily injury or death, and (3) he uses or exhibits a deadly weapon. *See* PENAL §§ 29.02(a)(2), 29.03(a)(2). Robbery or aggravated robbery *by threat* cannot be committed "recklessly." *Compare* PENAL § 29.02(a)(1) (robbery by injury, which includes "recklessly"), *with* PENAL § 29.02(a)(2) (robbery by threat, which does not include "recklessly"). Thus, the definition of "recklessly" was not applicable to the offenses as indicted in this case and should not have been included in the charge. The charge omissions and addition of which Appellant complains are indeed error.

Because Appellant did not object to these errors at trial, we must next determine if they caused egregious harm such that Appellant was deprived of a fair and impartial trial. *See Almanza*, 686 S.W.2d at 171. To do so, we must examine all of the *Almanza* factors: (1) the jury charge itself; (2) the state of the evidence, including weight and probative value; (3) counsel's arguments; and (4) any other relevant information in the trial record.

First, it is significant that the application paragraphs of the charge properly tracked the language for aggravated robbery by threat.[1] The Court of Criminal Appeals has held that where the abstract portion of a charge indiscriminately set forth incorrect conduct elements, but the application paragraph correctly stated the offense and pointed the jury to the appropriate definitions, no harm resulted. *Hughes*, 897 S.W.2d at 296–97; *see also Patrick v. State*, 906 S.W.2d 481, 493 (Tex. Crim. App. 1995) ("We conclude that because the facts, as applied to the law in the application paragraph, pointed the jury to the appropriate portion of the definitions, no harm resulted from the court's failure to limit the definitions of culpable mental states"). Here, the abstract portion of the charge incorrectly omitted conduct elements and added an unnecessary culpable mental state. However, the application portion of the charge precisely tracked the indictment, as well as the language for aggravated robbery by threat found in the Penal Code. This factor weighs against a finding of egregious harm.

Second, the content and probative value of the evidence weighs against a finding of harm. The focus of the evidence at trial was not on Appellant's mental state, but rather on his identity, i.e., whether he was there in the first place. At trial, Appellant testified that he was not the person at the scene of the crimes. The evidence offered at trial that tied Appellant to the crime scenes was primarily circumstantial. There was no testimony that reflected a dispute about whether Appellant intended to cause the result of his conduct, engage in the nature of his

---

[1]The trial court charged the jury as follows:

> "Now if you find from the evidence beyond a reasonable doubt that . . . [Appellant], did then and there, while in the course of committing theft of property and with intent to obtain or maintain control of the property, intentionally or knowingly threaten or place Megan Young in fear of imminent bodily injury or death, and the Defendant did then and there use or exhibit a deadly weapon . . . ."

Each of the five counts used identical language, but with a different victim's name each time and differing deadly weapons—including a handgun, a firearm, and a knife.

conduct, or the circumstances surrounding his conduct. Likewise, the State offered no evidence that Appellant was merely reckless. The only testimony regarding intent was from Ortiz—that he and Appellant intended to place their victims in fear.

Third, counsel's arguments, similar to the evidence, weighs against a finding of harm. Appellant's defensive theory did not hinge on distinctions within the conduct elements. At trial, Appellant testified that he was not the person at the scene of the crimes. The State's arguments focused on tying Appellant to the scene of the crimes. The State never argued improper conduct elements, nor did it argue that Appellant merely recklessly placed the victims in fear of bodily injury.

Fourth, the remainder of the record does not show harm. During voir dire, the State correctly differentiates between aggravated robbery by causing bodily injury and aggravated robbery by threat, omitting the culpable mental state of "recklessly" for the latter. The record is otherwise bereft of any mention of conduct elements or whether Appellant's mental state was reckless, as opposed to intentional or knowing.

Accordingly, the record does not reflect that the charge errors in this case vitally affected Appellant's defense or deprived him of a fair and impartial trial. *See Wright v. State*, No. 02-15-00399-CR, 2016 WL 6520189 at *4 (Tex. App.—Fort Worth Nov. 3, 2016, no pet.) (mem. op., not designated for publication). We overrule Appellant's first and second issues.

II. *Comment on Appellant's Post-Arrest Silence*

In Appellant's third issue, he claims that the trial court abused its discretion in denying his motion for a mistrial after a State witness made an improper comment on Appellant's post-arrest silence. We review a trial court's denial of a motion for mistrial under an abuse of discretion standard. *Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004). Only highly prejudicial and incurable errors will necessitate a mistrial. *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003). Where evidence has been improperly admitted, such error is presumably

corrected by a withdrawal and an instruction to disregard. *Waldo v. State*, 746 S.W.2d 750, 752 (Tex. Crim. App. 1988). The curative effect of an instruction to the jury will suffice "except in extreme cases where it appears that the evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds." *Id.* (quoting *Harris v. State*, 375 S.W.2d 310 (Tex. Crim. App. 1964)). To determine whether an instruction is effective, we look to the record, focusing our attention on: (1) the nature of the error; (2) the persistence of the prosecution in committing it; (3) the flagrancy of the violation; (4) the particular instruction given; and (5) the weight of the incriminating evidence. *See id.* at 754; *see also Hardin v. State*, 20 S.W.3d 84, 93–94 (Tex. App.—Texarkana 2000, pet. ref'd).

One of the basic constitutional protections in a criminal trial is that a defendant who remains silent after his arrest cannot have that silence used against him. *Miranda v. Arizona*, 384 U.S. 436, 468 n.37 (1966); *Hardie v. State*, 807 S.W.2d 319, 322 (Tex. Crim. App. 1991). Despite this, Detective Rocha, a witness for the State, testified to the following.

> [STATE]: Were there any other agencies that cooperated with you in this investigation?
>
> [DETECTIVE ROCHA]: Yes, ma'am. At the very end, once we had enough probable cause to arrest both [Ortiz] and [Appellant], it was brought up that they did more than what we had uncovered. There was one aggravated robbery that they did at a liquor store, which we could not identify in our agency. Where [Appellant] lives is in the county, so we notified county when we went to go pick up [Appellant]. When we picked up [Appellant], I gave him a second time to tell me the truth about what happened, and he refused. He lawyered up right then and there, which is typical for someone who's basically been caught. So --

At this point, Appellant objected to the comment and moved for a mistrial. The trial court denied the motion but gave an instruction to disregard. After the

8

witness was excused, the trial court gave a second, lengthier instruction regarding Fifth Amendment privileges. As discussed below, we conclude that the witness's error was curable and that these two instructions were effective in withdrawing improper impressions from the minds of the jury.

We start our review with the comment itself. If it is improper for a witness to testify about the defendant's silence when questioned by police, then it is even more improper for a witness to testify not only about the defendant's silence but also his request for legal representation. *See Waldo*, 746 S.W.2d at 752.[2] Thus, Detective Rocha's comment itself weighs in favor of finding egregious harm.

However, Detective Rocha's improper comment was a nonresponsive answer to an otherwise permissible question. Courts have said that when an improper comment was not solicited by the State, and the State did not capitalize on the comment, the trial court's instruction is still presumed effective. *Waldo*, 746 S.W.2d at 755; *Fletcher v. State*, 852 S.W.2d 271, 275 (Tex. App.—Dallas 1993, pet. ref'd). Here, the prosecution did not solicit this evidence. The State did not attempt to revisit Detective Rocha's improper comment through additional testimony or questions. The State refrained from mentioning this comment or arguing an admission of guilt from silence in its closing arguments. This weighs strongly against finding harm. *See Fletcher*, 852 S.W.2d at 275 (finding that "any harm was

---

[2]The following exchange in *Waldo* was held to be an improper comment on the defendant's silence:

Q. At which point what did you do?

A. By this time, Bonny had come out of the restroom, we sat her down on the bed next to [the defendant], Detective Thomas removes the rights card, reads them their rights, *asks them if they have any statements to make, which there was no response.*

746 S.W. 2d at 752.

mitigated" where the State made no further mention of the defendant's silence and did not pursue any further questioning).

The trial court gave not one, but two instructions to disregard. First, the trial court gave an instruction to disregard immediately following the comment, saying, "Ladies and gentlemen of the jury, you are instructed to disregard the statement just made by the witness and don't consider it for any reason or purpose whatsoever." Second, upon request of Appellant, the trial court gave an additional Fifth Amendment instruction after the offending witness was excused.

> THE COURT: All right. Have a seat. Ladies and gentlemen, you are reminded that no person shall be compelled in any criminal case to be a witness against himself. . . .

We note that, prior to this second instruction, Appellant chose to cross-examine Detective Rocha regarding his improper comment. These questions were presumably intended to explain the impropriety of Detective Rocha's statement and impeach his credibility by showing his tendency to assume guilt based on the exercise of basic constitutional rights. This testimony, solicited voluntarily by Appellant, effectively supplemented the trial court's instruction to disregard by pointing out *why* the improper comment should be disregarded. Therefore, Appellant's cross-examination of Detective Rocha weighs in favor of presuming the court's instructions were effective.

The weight of evidence presented at trial is helpful to our review. The jury did not need to rely upon Appellant's silence to find guilt. The weight of the incriminating evidence presented was strong. The State called Joe Ortiz, who testified that he robbed these three stores with the help of Appellant. The evidence at trial corroborated Ortiz's story. The second robber wore a distinct pair of $300 shoes to these robberies—the same type of shoes Appellant was wearing when he was arrested. Video footage showed that the second robber exhibited a knife with a

brown handle and black blade—the same kind of knife that Appellant owned and always carried. Appellant admitted that the person who robbed these stores would have to have been "somebody else" who had the same kind of knife and shoes. Further, there were multiple inconsistencies in Appellant's testimony. Appellant testified he was the passenger and not the driver of the stolen vehicle. However, the police only saw one person flee the crashed vehicle and only caught one person after establishing a perimeter around the crashed vehicle. Further, the crashed vehicle did not show signs of a passenger; the passenger door was closed, while the driver's side was open. The weight of the evidence minimizes the likelihood that Detective Rocha's comment was a significantly motivating factor for the jury's verdict and supports a finding that the trial court's instructions to disregard cured the error.

Viewing the record as a whole, the only factor weighing in favor of Appellant is the initial comment itself. The other factors reviewed evince a careful response by the State, defense counsel, and the trial court that cured the error and effectively struck the improper testimony from juror consideration. We overrule Appellant's third issue.

<em>This Court's Ruling</em>

We affirm the judgments of the trial court.


W. BRUCE WILLIAMS
JUSTICE


February 23, 2023

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.